STATE of Minnesota, Respondent,

v.

Allen Dale HANSON, a.k.a. A. D. Hanson, Appellant.

No. 49367.

Supreme Court of Minnesota.

Nov. 2, 1979.

C. Paul Jones, Public Defender and Michael F. Cromett, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Thomas L. Fabel, Deputy Atty. Gen., Mark M. Suby and David McKenna, Sp. Asst. Attys. Gen., St. Paul, John E. Pearson, County Atty., Detroit Lakes, for respondent.

Heard before ROGOSHESKE, TODD, and WAHL, JJ., and considered and decided by the court en banc.

TODD, Justice.

Allen Hanson in March 1977 advertised military surplus jeeps for sale at $295, plus $50 freight. A deposit of $95 was required. Hanson owned no jeeps at the time of the ad and never acquired any jeeps. Hanson collected over $2,500 in deposits from residents of Minnesota and North Dakota. He was convicted of swindling. We affirm.

Hanson has a military background, having spent 14 years in military and National Guard service. In early 1976, he successfully organized and operated a business dealing in the buying and selling of surplus military tires. Late in 1976, he turned this business over to his son-in-law. He testified that based on his travels in the tire business, he became familiar with the disposal of government surplus military equipment. He testified that he observed jeeps being offered for sale. Apparently he assumed he could buy surplus military jeeps for about $100. The evidence disclosed that the average price of scrap jeeps was $251.44, and that of excellent jeeps was $1,175.

For 2 weeks in March 1977, Hanson placed several newspaper ads in northwestern Minnesota publications. The ads indicated a selling price for jeeps of $295, plus $50 freight, and required a $95 deposit with each order. The jeeps were advertised "As Is—No Choice—Supply limited—guaranteed to be in usable condition—Certificate of origin or Government Form 95 furnished upon request for title." Delivery time was specified as 6 to 10 weeks, but the right was reserved to extend delivery time as necessary with no refund of deposit. The ad indicated the models available were M151, DJ5, M38, 8305, and others. Hanson received orders immediately from residents of northwestern Minnesota and North Dakota, including orders from residents of Becker County, Minnesota.

Hanson opened a business account in the Union Bank of West Fargo, North Dakota, where he deposited 16 deposit checks. Other deposit checks were either personally presented by Hanson for payment or sent to the drawee bank with a letter requesting a bank money order or certification of the check. Hanson did return some orders and deposit checks indicating that the orders could not be filled. On those orders for which the deposit was retained, Hanson sent a letter on March 17, 1977, acknowledging the order and indicating a delivery date of June 7, 1977, for a model M-38 jeep. On June 11, 1977, Hanson sent another letter indicating a delay in delivery and that further contact would be made in 30 to 60 days. No other contact was made.

An investigator for the Minnesota Attorney General's office contacted Hanson on March 17, 1977. Hanson told the investigator that he had purchased military surplus jeeps in the past. He also indicated there was no trust fund for the deposit money. During part of the interview, Hanson's attorney was present and from time to time told him not to answer certain questions.

A military official testified at trial that there was no record of jeep purchases by Hanson in the past. He further testified that the M-38 is infrequently available since it is an older model and he had not seen one in his disposal facility since 1968. He also testified that the M-151 model was not licensable since it had to be mutilated before sale.

On April 5, 1977, Hanson withdrew all but $105 from the West Fargo bank account. Later this account was closed. No jeeps were ever delivered and no deposits were returned.

In October 1977, Hanson was charged with theft of over $100 but less than $2,500 in violation of Minn.Stat. § 609.52, subd. 2(4) and 609.52, subd. 3(2) 3(2)(5) (1978), and entered a plea of not guilty. In January 1978, at an omnibus hearing, the charge was amended to theft of over $2,500 in violation of Minn.Stat. §§ 609.52, subd. 2(4) and 609.52, subd. 3(1) 3(1)(5). A jury in Becker County, Minnesota, found defendant guilty on March 16, 1978.

The issues presented are:

(1) Whether the statutory authority of the prosecutor to aggregate separate offenses into a single offense is overbroad.

(2) Whether a criminal defendant can be tried in a county where some, but not all, of the offenses occurred.

(3) Whether the jury instructions on the elements of theft by swindle were correct.

(4) Whether unsolicited testimony that defendant had refused, on advice of counsel, to answer some questions during investigation was prejudicial.

(5) Whether the evidence supports the conviction.

■ 1. Minn.Stat. § 609.52, subd. 3(5) (1978), provides in part that "in any prosecution under [various statutory provisions] the value of the money or property received by the defendant in violation of any one or more of the above provisions within any six month period may be aggregated and the defendant charged accordingly." We upheld the constitutionality of this statute in *State v. Mathiasen*, 273 Minn. 372, 141 N.W.2d 805 (1966). Here, the challenge goes to the prosecutor's discretion to either prosecute seriatum or aggregate the offenses. The statute informs all persons that certain types of theft are subject to aggregation. The types of theft are specified and the method of aggregation defined. Thus, any potential defendant has notice of the possible criminal penalties

arising from his actions. If the defendant chooses to commit a series of thefts within 6 months, he subjects himself to the possibilities of trials and punishments for each theft, of a single trial and punishment for all the thefts, or of trials and punishments for combinations of thefts. This scheme gives the prosecutor the same kind of discretion in selecting charges as does the general criminal code. Every time the facts of a case may lead to several different combinations of charges, the prosecutor must select the particular charges best suited to achieve justice. Thus, the traditional reasons for allowing prosecutorial discretion in charging would vitiate any claims of a lack of due process or unequal protection of the laws under § 609.52, subd. 3(5). *See United States v. Batchelder*, —— U.S. ——, 99 S.Ct. 2198, 2204–5, 60 L.Ed.2d 755 (1979).

Defendant's reliance on *State v. Pirkey*, 203 Or. 697, 281 P.2d 698 (1955), is misplaced since that case invalidated a statute which allowed the prosecutor to charge either a misdemeanor or a felony for the single act of passing one fraudulent check. That statute neither related the punishment to the offense nor limited the prosecutor's discretion. Such a situation is in marked contrast to that under subd. 3(5), however. Under the Oregon statute, the prosecutor could charge either misdemeanor or felony at his whim and the punishment depended upon his characterization of the offense. Under the Minnesota statute, a prosecutor cannot change the punishment merely by charging a "felony." If the prosecutor wishes to seek the increased punishments of a felony, he must incur the increased burdens of proving acts of theft totaling over $100 or over $2,500, aggregated over a period of 6 months.

On its face and as applied, § 609.52, subd. 3(5), does not grant the prosecutor unfettered discretion to charge offenses.

■ 2. Minn.Stat. 609.52, subd. 3(5), provides in part "that when two or more offenses are committed by the same person in two or more counties, the accused may be prosecuted in any county in which one of

the offenses was committed for all of the offenses aggregated under this paragraph."

Hanson contends that he was denied a "jury drawn from the vicinage (neighborhood of the crime)" because most of the offenses charged took place in counties other than the one in which he was tried. This argument misconceives the effect of the aggregation statute.

Minn.Stat. § 609.52, subd. 3(5), permits the creation of a "continuous offense" under which separate misdemeanors become elements of a single offense. *State v. Mathiasen*, 273 Minn. at 378, 141 N.W.2d at 810. The United States Supreme Court has held that, for a continuous offense, the locality of the crime extends over the whole area in which the defendant operates or has an effect. *United States v. Cores*, 356 U.S. 405, 408, 78 S.Ct. 875, 2 L.Ed.2d 873 (1958). Thus, under the Federal Constitution venue would be properly laid in any county where any element of the felony occurred because that would be a county in which the crime was committed or furthered. There seems no reason to interpret the State Constitution differently. Since defendant admittedly committed some acts in the counties in which he was tried, the venues for his trials were properly laid.

■ 3. In instructing the jury on whether Hanson's acts constituted a swindle under the Minnesota statute, the court stated:

The third element is that the defendant's act must have been a swindle. The essence of a swindle is the cheating and defrauding of another person by deliberate artifice or scheme. The term "swindle" refers to any fraudulent scheme, trick or device whereby one person deprives another person of money or property by deceit or betrayal of confidence. It is not necessary, however, that the person named in the complaint have reposed special confidence in the defendant. A swindle can be accomplished by false representation as to both past and future facts. A swindle may include a trick or a scheme consisting of mere words and actions, and it does not require the use of

some mechanical device or something like that.

The trial court eliminated the portion of the standard instruction requiring that "the trick must be of such a nature that ordinary prudence cannot guard against it." This requirement arose from the case of *State v. Cunningham*, 257 Minn. 31, 38, 99 N.W.2d 908, 913 (1959).

Since *Cunningham*, the 1963 Criminal Code has completely restructured the statutory approach to and the scheme of punishment for theft. This restructuring resulted in a vagueness challenge to the new swindling statute. In *State v. Ruffin*, 280 Minn. 126, 158 N.W.2d 202 (1968), this court upheld the statute. In dicta, however, the court seemed to reject the ordinary prudence test when it stated that "gullible people" as well as those with ordinary prudence should be protected by the statute. *Ruffin*, 280 Minn. at 130, 158 N.W.2d at 205.

An adoption of this change from prior interpretations of the swindling statute is justified. The modern approach to theft focuses on protecting citizens in a comprehensive way from theft while letting the penalties be determined mostly by the amounts taken. Minn.Stat. § 609.52. This eliminates the need to draw fine distinctions between swindling and other types of theft as had been done prior to 1963 because of the possibility of a higher penalty for swindling. "It seems to us that it may be fairly said that the statute punishes any fraudulent scheme, trick, or device whereby the wrongdoer deprives the victim of his money or property by deceit or betrayal of confidence." *Ruffin*, 280 Minn. at 130, 158 N.W.2d at 205. No additional instruction on the victim's prudence is required, and none should be given.

■ 4. During the course of the trial the investigator from the attorney general's office in response to questions of the prosecutor stated:

Q: (By the prosecutor.) Then I understand that you did have some conversation with him during which you asked questions and he gave answers?

A: Yes, sir.

Q: Would you please relate to the jury what took place?

A: Okay. During approximately the next hour, I asked certain questions pertaining to the operation of the Surplus Jeep business, at which point his attorney was present at all times. Some of the questions were not answered by Mr. Hanson at his attorney's direction, but for the most part the questions that I asked were answered. We discussed the tire business that he had.

No objection was made. Rather, defense counsel pursued the subject in cross-examination. The prosecutor made no reference to this statement in closing argument. No request for a curative instruction was made, and the issue was not raised in a motion for new trial. We conclude that Hanson has waived any objection to this statement. *State v. Caulfield*, 269 N.W.2d 350 (Minn. 1978).

5. We have examined the record and find no merit in Hanson's contention that the evidence is insufficient to support the verdict of guilty.

Affirmed.