**STATE of Minnesota,**
**Petitioner, Appellant,**

v.

**Jerome John KREJCI,**
**Petitioner, Respondent.**

No. C6–88–1297.

Supreme Court of Minnesota.

Aug. 3, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Thomas L. Johnson, Hennepin Co. Atty., Linda K. Jenny, Asst. Co. Atty., Minneapolis, for appellant.

John Stuart, State Public Defender, Steven P. Russett, Asst. State Public Defender, St. Paul, for respondent.

WAHL, Justice.

The legislature has determined that a criminal action arising out of an incident of alleged child abuse may be prosecuted in the county where the alleged abuse occurred or the county where the child is found. Minn.Stat. § 627.15 (1988). The question before us in this case is whether section 627.15 as applied to bring defendant to trial in Hennepin County for the first degree assault of his 21–month–old son in Renville County violated his right, under article 1, section 6, of the Minnesota Constitution, to a trial by jury in the district where the crime occurred. The court of appeals held section 627.15 unconstitutional as applied, reversed defendant's conviction for first degree assault and remanded the case for trial in Renville County. *State v. Krejci*, 441 N.W.2d 510, 514 (Minn.App. 1989). We granted the state's petition for review of this decision as well as defendant's cross-petition which raises issues of double jeopardy if the case is retried, waiver of right to a jury trial and waiver of right to counsel. We reverse in part, affirm in part and reinstate the judgment of conviction.

The facts giving rise to this case are as follows: Defendant, his wife and five children ranging in age from 7–year–old Gordon to 21–month–old Lynn, were living in Morton, Minnesota, in late November, 1986.[1] At that time, defendant struck 21–month–old Lynn in the mouth, while Lynn was standing on a chair in the kitchen, and knocked him off the chair. Lynn fell to the floor, hit his head and stopped breathing. Defendant and his wife attempted to resuscitate their son. He began breathing again within two hours but they failed to seek any medical attention for him.

After this incident, Lynn began blacking out. He was also unable to walk, could not use his right arm, and his speech was impaired. Whenever Lynn would black out, defendant and his wife would attempt to revive him by pinching and "smacking" him. Defendant also hit Lynn in the legs

---

1. The family had come to Minnesota from Alabama in 1985, lived in Minneapolis from January to June in 1986, lived two months in Pennsylvania, then again in Minneapolis before moving to Morton. The youngest son's name is spelled as both "Lynn" and "Lyn" in the record.

with a book and punched his feet in order to wake him.

Defendant and his family came to Minneapolis on December 12 or 13, 1986 to visit some friends. On December 14, 1986 at approximately 11:00 or 11:30 a.m., Lynn's entire body "seized up" and he went into a coma. Defendant's wife waited until approximately 2:00 p.m., then brought Lynn to Children's Hospital in Minneapolis. He was comatose with impending respiratory failure. His diagnosis revealed a severe head injury which had happened two to four weeks prior to admission. Further examination revealed that Lynn had a skull fracture, with subdural hematomas, cerebral atrophy and a left cerebral infarction. He had right-sided paralysis, a seizure disorder and neurologic findings that suggested a severely damaged brain. Lynn also had pneumonia, fresh cuts and bruises on his body and smelled of urine. Surgery was immediately performed to relieve the pressure on Lynn's brain.[2] Treating physicians at Children's Hospital concluded from their examinations that the trauma which caused Lynn's injuries was non-accidental. They attributed the child's injuries to a continuing pattern of physical abuse and neglect, including the parents' deliberate failure to seek medical care for those injuries.

As a result of the police investigation which began the day Lynn was admitted to the hospital, defendant was charged in Hennepin County, on December 19, 1986, with first degree assault. The complaint was subsequently amended to include charges of neglect of a child and malicious punishment. Because the complaint alleged that the great bodily harm suffered by Lynn was inflicted in Renville County, defendant moved to dismiss the charges claiming venue in Hennepin County was improper since no element of the crime occurred there. At no time did he request a change of venue to Renville County. Judge Ann Montgomery, applying section 627.15, found venue in Hennepin County

proper because the child was found in Hennepin County.

The court of appeals denied defendant's petition for a writ of prohibition or mandamus challenging this decision. In the ensuing months defendant made a number of appearances before a number of Hennepin County judges. Because he rejected representation by the public defender's office and was unable to obtain private counsel, defendant was eventually ordered by the court to proceed pro se with standby counsel to assist him. On February 22, 1988, he appeared before the court, Judge Franklin Knoll, for trial. Defendant agreed to waive a jury trial and to submit the assault charge to trial by the court if the state would drop the other two charges and his sentence would be capped at 85 months in the event he was found guilty. The court found defendant guilty of first degree assault and sentenced him to 85 months in prison. The charges of child neglect and malicious punishment were dismissed.

On appeal, the court of appeals held section 627.15 unconstitutional as applied and reversed the case, remanding for retrial in Renville County with a note that double jeopardy did not bar retrial. The court of appeals found defendant had voluntarily waived his right to counsel and his right to trial by jury. We granted both the petition of the state and the cross-petition of defendant for review.

■ 1. The crucial question before us is whether venue in Hennepin County was proper. Or, put more specifically in the context of the case, whether Minn.Stat. § 627.15 (1988), as applied to bring defendant to trial in Hennepin County for the first degree assault of his 21–month–old son in Renville County, violated defendant's right under article 1, section 6, of the Minnesota Constitution to a trial by jury in the district where the crime occurred.

---

**2.** Lynn is permanently brain damaged and has spastic dysplasia. At the time of trial, he was partially paralyzed, unable to crawl, walk or sit upright. The diagnosis is that he will have developmental and learning problems and difficulty with speech. His right hand will only be used as "an assisting hand."

Section 627.15 is a special venue statute placing venue in a criminal action arising out of an incident of alleged child abuse in either the county where the alleged abuse occurred or in the county where the child is found. Lynn Krejci was "found" in Hennepin County, i.e., authorities discovered the alleged abuse when Lynn was brought comatose to Children's Hospital in Hennepin County as a result of the injury defendant inflicted on him in Renville County. Thus, if the statute is constitutional, facially and as applied, venue in Hennepin County was proper.

The Minnesota Constitution, article 1, section 6 (Supp.1989) (amended by ballot in 1988), provides the accused in a criminal prosecution "the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law." "['C]ounty where the offense was committed' means any county where any element of the offense was committed * * *." Minn.Stat. § 627.01, subd. 2 (1988). *See also State v. Hanson,* 285 N.W.2d 483, 486 (Minn.1979) (venue under federal and state constitutions properly laid in any county where any element of the crime was committed).

Defendant acknowledges that section 627.15 is not on its face unconstitutional. The constitution requires only that an offense be tried within a district where an element of the crime occurred. The question then becomes whether section 627.15 is unconstitutional as applied in this case. "[W]here acts constituting the crime and the nature of crime charged implicate more than one location, the [United States] constitution does not command a single exclusive venue," *United States v. Reed,* 773 F.2d 477, 480 (2nd Cir.1985), nor does the Minnesota Constitution. We have recognized this principle by promulgating and upholding rules governing venue in special cases.[3] *See State v. Smith,* 421 N.W.2d 315, 320 (Minn.1988) (Minn.R.Crim.P. 24.02, subd. 4, "confers venue on the county where the body [of a homicide victim] was found where either the death or death blows occurred somewhere within the state"). *Smith* also makes clear that "if a state has jurisdiction over the crime, then a determination of the precise county [venue] for trial is less significant * * *. [V]enue deals with convenience and location of trial rather than with the power of the court to hear the action in the first place." 421 N.W.2d at 320 (citations omitted).

This court has recognized since the early years of statehood that the legislature

---

**3.** Under the early common law, if a person was beaten in one county but died in another, neither county could have venue over the case because the crime was not complete in either county. *State v. Smith,* 421 N.W.2d 315, 318 (Minn.1988) (citations omitted). *See also* Annotation, *Venue in Homicide Cases Where Crime is Committed Partly in One County and Partly in Another,* 73 A.L.R.3d 907, 912 (1976). This rule was subsequently changed under the common law. The rule became that if a person received an injury in one county and died in another, the trial for murder could only be where the fatal blow was inflicted. *Smith,* 421 N.W.2d at 318. *See also* 1 W. LaFave & A. Scott, *Substantive Criminal Law,* § 2.7(b), at 164 (1986); Annotation, *Venue,* 73 A.L.R.3d at 912.

In time, this venue rule created problems in situations where the victim was struck in one county, or premeditation, conspiracy or abduction took place in one county, and the injury or death took place in another county. Annotation, *Venue,* 73 A.L.R.3d at 912. As a result, the legislatures of many states enacted special venue statutes which allow venue in two or more

counties for situations where the crime was committed partly in one county and partly in another, or where the act or injury was in one county and the death or body were in another. *See, e.g., State v. Sweeney,* 203 Iowa 1305, 1310, 214 N.W. 735, 738 (1927) (public offense partly in one county and partly in another, venue in either county); *Washburn v. State,* 692 S.W.2d 576, 577 (Tex.App.1985) (where person receives injury in one county and dies in another, venue in either county).

Special venue statutes have withstood constitutional scrutiny in those states which have a constitutional provision requiring trial in the county where the criminal act occurs because they have been construed to break down the essential elements of a criminal offense into two or more elements which can occur in two or more counties. These statutes view the crime to be both the initial criminal act and the result of this act. Therefore, venue may be had in the county where the criminal act occurred (where the injury producing agency was set in motion) or in the county where the injury or death occurred.

must have some room to expand upon the constitutional provisions relating to venue. In *State v. Miller*, 15 Minn. 344 (Gil. 277) (1870), the court upheld a statute dealing with change of venue on application of the state. *See also State v. Robinson*, 14 Minn. 447 (Gil. 333) (1869) (offenses within 100 rods of county line may be tried in either). In *Hanson*, 285 N.W.2d at 485–86, we held Minn.Stat. § 609.52, subd. 3(5) (1978), constitutional in providing that when two or more offenses are committed by the same person in two or more counties, the accused may be prosecuted in any one of those counties for all of the offenses aggregated under that statute.

The legislature has the authority, within the confines of the constitution, to enact special venue statutes and has done so when special needs relating to venue have arisen. In 1975 we adopted the provisions of existing special venue statutes as Rule 24.02, Minnesota Rules of Criminal Procedure.[4] In 1977, the legislature, in considering amendments to the Child Abuse Reporting Act (Minn.Stat. § 626.556), perceived the need for establishing additional venue for cases involving maltreatment of minors. Act of May 20, 1977, ch. 212, § 1, 1977 Minn.Laws 345 (codified at Minn.Stat. § 627.15 (Supp.1977)). Criminal cases arising out of incidents of alleged child abuse present special venue problems. An abusing parent may, as here, be concealing his abusive behavior. A battered child may, as here, be moved by an abusing parent from one county to another. The parents may not accurately report or may not actually know where the blow, among many others, that caused the injury occurred. And in most cases, the child, certainly not a 21–month–old child, whether or not comatose, cannot tell where he was when the blow or the injury occurred. In light of the hidden nature of child abuse and the emerging magnitude of the problem,[5] the legislature, pursuant to Minn.Stat. § 480.059, subd. 8 (1988), enacted section 627.15 to permit a criminal action arising out of an incident of alleged child abuse to be prosecuted either in the county where the alleged abuse occurred or in the county where the child is found. By enacting this statute, the legislature no more amended the Minnesota Constitution than it did in enacting the special venue statutes which this court adopted as Rule 24.02, subds. 1–12, Minnesota Rules of Criminal Procedure.

In *State v. Norton*, 328 N.W.2d 142, 144 n. 1 (Minn.1982), we pointed out to prosecutors the availability of section 627.15 when a child victim has no idea in which county abuse occurred. We noted that, in this regard, section 627.15 was consistent with Rule 24.02, subd. 3, as regards doubtful cases. The court of appeals took this observation to mean that we would approve of the statute only in doubtful cases. *State v. Krejci*, 441 N.W.2d at 514. This is

4. **Rule 24.02, subd. 1** (Offense Committed on Public or Private Conveyance) from Minn.Stat. §§ 627.05, 627.06 (1971) (This would include offenses committed on watercraft, aircraft, or vehicles.); **Rule 24.02, subd. 2** (Offenses Committed on County Lines) from Minn.Stat. § 627.07 (1971); **Rule 24.02, subd. 3** (Injury or Death in One County from an Act Committed in Another County) from Minn.Stat. § 627.08 (1971); **Rule 24.02, subd. 4** (Prosecution in County Where Injury or Death Occurs) from Minn.Stat. § 627.09 (1971); **Rule 24.02, subd. 5** (Prosecution When Death Occurs Outside State) from Minn.Stat. § 627.10 (1971); **Rule 24.02, subd. 6** (Kidnapping) from Minn.Stat. § 627.13 (1971); **Rule 24.02, subd. 7** (Libel) from Minn. Stat. § 627.14 (1971); **Rule 24.02, subd. 8** (Bringing Stolen Goods Into State) from Minn. Stat. § 609.525; **Rule 24.02, subd. 9** (Obscene or Harassing Telephone Calls) from Minn.Stat. § 609.79 (1971); **Rule 24.02, subd. 10** (Fair Campaign Practices) from Minn.Stat. §§ 210A.34, 210A.36 (1975); **Rule 24.02, subd. 11** (Series of Offenses Aggregated) from Minn. Stat. § 609.52, subd. 3(5) (1971), as amended; **Rule 24.02, subd. 12** (Non–Support of Wife or Child) from Minn.Stat. § 609.375 (1971).

5. "Minnesota reporting rates increased more than 500% from 1966 to 1978, with the number of counties filing reports rising from 18 to 80 (Minnesota Department of Public Welfare, undated). In 1975, when professionals other than medical care providers were first mandated to report, suspected incidents reported rose from 362 to 519." R. Tuohy, *Mainstream and Special Education Teachers' Knowledge and Attitudes Regarding the Mandatory Reporting of Child Abuse and Neglect,* (unpublished Masters Thesis, August 1982, University of Minnesota). *See also Attorney General's Task Force on Child Abuse Within the Family: A report to Hubert H. Humphrey III, Attorney General* (October 2, 1986).

not so. The legislature enacted section 627.15, after we adopted the rules of criminal procedure, to meet a newly emerging special venue need.[6] To the extent Minn. Stat. § 627.15 is consistent with Rule 24.02, subd. 3, it is already covered by the rule. To the extent that the statute may on occasion be susceptible to broader application, we hold Minn.Stat. § 627.15 comports with article 1, section 6, of the Minnesota Constitution. We reverse the court of appeals on this issue and hold that in this case venue in Hennepin County was proper.

■ 2. Defendant, by cross-petition, questions the validity of his waiver of his right to counsel and his waiver of his right to a jury trial.[7] Defendant contends that his waiver of his Sixth Amendment right to counsel was not knowingly and intelligently made where the trial court failed to advise him of the perils of proceeding pro se and failed to inquire into his reasons for rejecting the public defender. The court of appeals rejected this argument and so must we.

Defendant had a court-appointed attorney from the time he was arrested in December 1986 through January 11, 1988. During that period of time he made 19 appearances before 12 different judges. During those appearances he alluded to the inadequacy of his representation. Defendant also wrote letters to the judges explaining why he did not want the counsel appointed to represent him. He delayed his trial by telling the court that he was making arrangements to obtain private counsel. Because of defendant's dissatisfaction, in December 1987, a different public defender was appointed. On December 14, 1987, defendant informed the court he was getting private counsel and obtained a delay of his trial date pending substitution of counsel. On December 18, 1987, defendant told the court he had private counsel and his public defender was discharged.

The next month, after the matter was assigned to Judge Knoll for trial, defendant appeared in court without counsel. When asked why he was unrepresented, he said he could not get an attorney. Defendant specifically refused the offer to have the public defender's office try the case. At that time the trial court, perturbed by defendant's delaying tactics, told defendant that the matter could be delayed no longer and it was going to trial. The court appointed defendant's second public defender to act as standby counsel. The trial court asked defendant if he understood that since he was rejecting appointed counsel and could not obtain private counsel, he would be acting pro se. Defendant stated that he understood. The trial court told defendant that if he changed his mind, he could have a public defender at any time. Defendant indicated that he understood.

■ It is the duty of the trial court to ensure a knowing and intelligent waiver of the right to counsel. We have said that, in order to make this determination, a court should make a "comprehensive examination of the defendant [regarding] his comprehension" of the charges against him, the possible punishments, the defenses, mitigating circumstances, and any other facts relevant to an understanding of the consequences of the waiver. *State v. Rubin,* 409 N.W.2d 504, 506 (Minn.1987); *Burt v. State,* 256 N.W.2d 633, 634–35 (Minn.1977) (citation omitted). We have also recommended that a lawyer be appointed to discuss with the defendant the consequences of the waiver. *Burt,* 256 N.W.2d at 635.

■ In the instant case, while the trial court, at the January 11, 1988 hearing, did not make the full, on-the-record inquiry which is normally required to ensure a valid waiver, it is clear from the surrounding circumstances—defendant's interaction with 12 different judges, his letters to

---

6. The fact that the legislature amended Minn. Stat. § 627.01, subd. 1, in 1979, to provide, "Except as otherwise provided by Rule 24 of the rules of criminal procedure * * *," added nothing to the law we established in 1975 by adopting Minn.R.Crim.P. 24.01 ("The case shall be tried in the county where the offense was committed *except as otherwise provided by these rules.*") (Emphasis added). Act of May 29, 1979, ch. 233, § 26, 1979 Minn.Laws 494.

7. We need not address the issue of double jeopardy because of our decision regarding venue.

those judges, his various conversations with two different public defenders, and his refusal to accept representation from the public defender's office—that the defendant was fully aware of the consequences of proceeding pro se. In addition, the record reflects that the trial court and counsel explained to the defendant the nature of the charges, the possible punishments, and the options available to him as a defendant. These explanations, although not given in the context of defendant's waiver of his right to counsel, provide ample evidence to support a determination that defendant made the waiver knowingly and intelligently. Beyond that, the fact that defendant refused to proceed with the public defender when he could not retain private counsel did not make the waiver involuntary.

■ An indigent defendant does not have an absolute constitutional right to the counsel of his choice. *Richardson v. Lucas*, 741 F.2d 753, 756–57 (5th Cir.1984). "A defendant's refusal without good cause to proceed with able appointed counsel constitutes a voluntary waiver of that right." *Id.* at 757. On January 11, 1988, after nearly a year of trying, defendant was unable to get a private attorney to represent him. At the same time he refused representation from the public defender's office without good cause. Under the circumstances the trial court concluded that defendant was going to represent himself, then appointed standby counsel to help him. Defendant had an opportunity to consult freely with standby counsel, who, for all intents and purposes, represented defendant at trial. At no time during any of the proceedings did defendant appear in court without counsel.

In sum, although it would have been preferable for the trial court to have made a more comprehensive examination into defendant's desire to represent himself, it is clear from the record that defendant understood the consequences of proceeding pro se. *See State v. Jones*, 266 N.W.2d 706, 712 (Minn.1978). His letters to the court also show him to be an articulate, intelligent man who understood the legal system and what was at stake at his trial. We hold that defendant validly waived his right to counsel.

■ Lastly, we consider defendant's contention that although he knowingly and intelligently waived his right to a jury trial, he did so involuntarily. Defendant claims that lack of compulsory process, lack of assistance of counsel, inadequate assistance of standby counsel and unreasonable trial delays operated to force him to waive his right to a jury trial. The court of appeals, noting that the lower court had twice explained to defendant the consequences of the waiver, rejected this argument and held that defendant's waiver was voluntary.

It is well-established that,

A defendant in a criminal case may waive a jury trial if the court approves and if the waiver is made orally or in writing after the defendant has been advised of his rights and has had an opportunity to consult with counsel. * * * The trial court has discretion whether to accept the waiver and should be satisfied that defendant was informed of his rights and that the waiver was voluntary.

*State v. Pietraszewski*, 283 N.W.2d 887, 889–90 (Minn.1979) (citation omitted).

Defendant first consented to a waiver of his right to a jury trial in front of Judge Schiefelbein on September 11, 1987. At that time, he was informed by counsel and by the court of all the consequences of such a waiver. Defendant was also questioned in detail about his desires. Despite advice to the contrary from his attorney, defendant consented to a bench trial on stipulated facts. After waiving his rights on the record, defendant thereafter sent Judge Schiefelbein a letter objecting to some of the statements in his file. Judge Schiefelbein immediately set the matter for trial by jury. Defendant then attempted to obtain private counsel, occasioning more delays in getting a trial date. Finally, trial was set for February 22, 1988. At the trial, defendant was again questioned in detail about his desire to waive his right to a jury trial. Defendant clearly stated that

he understood that he had a right to a jury trial and what was at stake in waiving his right. He then consented to have the trial court decide the case on a stipulated basis with the negotiated understanding that if he were found guilty of assault, his sentence would be capped at 85 months.

There is no merit to defendant's contention that he involuntarily waived his right to a jury trial. The record is replete with statements made by defendant that he wanted to have the case tried to a judge. Defendant's contention that his waiver was involuntary because of lack of assistance of counsel and standby counsel is also without merit. Defendant was represented by counsel the first time he waived a jury trial. When he consented a second time to a bench trial, standby counsel questioned defendant on the record concerning his waiver of a jury trial. Additionally, the unreasonable delay in trying the charges that defendant contends had an coercive effect on his waiver was caused in part by defendant. Defendant continually told the court he was dissatisfied with counsel; he told the court he was getting private counsel; he wrote letters to the court accusing his attorneys of improprieties. In addition, trial was delayed because of defendant's motions for dismissal on the issue of venue and his application to the court of appeals for a writ of prohibition. We hold that defendant validly waived his right to a jury trial.

We reverse the court of appeals in part, affirm in part and reinstate the judgment of conviction.

Reversed in part, affirmed in part. Conviction reinstated.

KELLEY, J., dissents.

KELLEY, Justice (dissenting):

Because it seems to me that once again this term of court the majority by undue reliance on the legislative enactments (Minn.Stat. Chapters 627 and 609) and rules promulgated under the rule-making power of this court (Rule 24, Minn.R.Crim.P.), and by writing into criminal statutes language that neither appears therein nor is warranted, has effectively ignored the clear mandate of a provision of the Minnesota Constitution's Bill of Rights restraining the state's power against one accused of crime, I respectfully dissent.

About as clearly as it could be stated, Art. 1, § 6 of the Minnesota Constitution provides that one accused of a crime be given "the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law." By holding as we did in *State v. Hanson*, 285 N.W.2d 483, 486 (Minn.1979) that the phrase "county * * * wherein the crime shall have been committed" means any county wherein any element of the offense was committed, we did no violence to that constitutional provision. Thus, consistent with *Hanson*, venue was properly laid consistent with Art. 1, § 6 in this case *only* if at least one element of the charged crime of first degree assault occurred in Hennepin County.

The majority opinion appears to be bottomed on Minn.Stat. § 627.15 (1988), a special venue statute which purports to permit the setting of venue in a criminal action arising out of an incident of child abuse in a county where the child is "found." By so doing it clearly conflicts with Art. 1, § 6 of the Constitution *unless* "finding" the child constitutes an element of the crime charged. Of course, it does not. Discovery of an assault—or a "finding" of the victim—is in no way an element of the crime of assault. Our statute defines the crime here charged, first degree assault, as an assault which inflicts great bodily harm. Minn.Stat. § 609.221 (1988). Assault is the intentional infliction of, or attempt to inflict, bodily harm upon another. Minn.Stat. § 609.02, subd. 10(2) (1988). It has never been disputed during the course of these proceedings that none of the elements for assault occurred in Hennepin County. Both the alleged assault and the injury to the child which resulted occurred in Morton, located in Renville County, approxi-

mately 100 miles from Hennepin County.[1]

Accordingly, I cannot accept the unsupported assertion that the legislature has the authority to enact special venue statutes, or that this court in promulgating criminal rules has the authority to ignore the specific and clear mandate of Art. 1, § 6 of the Minnesota Constitution. Because in this case it was never questioned that the alleged assault occurred in Renville County, the constitutional requirement that trial take place where at least one element of the crime charged occurred simply was not met. Therefore, I dissent.

---

1. The majority's reliance on *State v. Smith,* 421 N.W.2d 315, 320 (Minn.1988) (a homicide case) is, in my opinion, misplaced. In death cases, it may be impossible to pinpoint where the death blows occurred or where the death transpired. That, however, is not the case with an assault where, usually, the place of an assault is known as it is here.