STATE OF MINNESOTA

IN SUPREME COURT

A24-1173

Hennepin County                                                          Gaïtas, J.

State of Minnesota,

      Respondent,

vs.                                                          Filed: March 18, 2026
                                                             Office of Appellate Courts

Jeremiah Quan Turner,

      Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Robert I. Yount, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.     A district court's determination that a criminal defendant validly waived the constitutional right to counsel is reviewed de novo, but the factual findings underlying this determination are reviewed for clear error.

2.     The district court did not err when it determined that appellant's initial waiver of his right to counsel was valid.

1

3.	The district court did not err when it determined that appellant validly renewed the waiver of his right to counsel after the grand jury indicted him for first-degree domestic abuse murder.

Affirmed.

O P I N I O N

GAÏTAS, Justice.

Appellant Jeremiah Turner directly appeals from his conviction for first-degree domestic abuse murder. The State initially charged Turner with second-degree intentional murder and second-degree felony murder. Before his indictment, Turner appeared before the district court and waived his constitutional right to counsel. A grand jury later indicted Turner for first-degree domestic abuse murder and second-degree felony murder. Following the indictment, Turner again appeared before the district court and renewed his waiver of counsel. Turner then represented himself in pretrial proceedings, at a court trial based on stipulated facts and evidence, and at sentencing. The district court found Turner guilty of both counts and sentenced him to life in prison with the possibility of supervised release after 30 years for the first-degree murder count.

Before this court, Turner argues that his initial waiver of his constitutional right to counsel was not knowing, voluntary, and intelligent. He also argues that following the indictment—which added the count of first-degree domestic abuse murder and thus increased his maximum possible sentence—he did not validly renew his waiver of counsel. Turner asserts that his waiver of counsel was invalid, causing a structural error and entitling

2

him to a new trial. Because we conclude that the district court did not err in accepting Turner's waivers of counsel, we affirm Turner's conviction.

## FACTS

In December 2022, the police arrested appellant Jeremiah Turner for the death of his girlfriend, Jasmine Nelson. The State charged Turner with second-degree intentional murder, Minn. Stat. § 609.19, subd. 1(1), and second-degree felony murder, Minn. Stat. § 609.19, subd. 2(1),[1] and provided notice of intent to seek an aggravated sentence. The district court appointed a public defender to represent Turner, and that public defender represented Turner for approximately six months.

### *Turner's initial waiver of counsel*

On June 13, 2023, Turner filed a petition to proceed pro se. The district court held a hearing on the petition that same day. During the hearing, a supervising attorney from the public defender's office, in addition to Turner's assigned public defender, appeared with Turner. The supervising public defender told the district court that Turner had called him "a couple of times and had raised concerns" and that Turner had expressed a desire to represent himself. According to the supervising public defender, he had spoken with Turner twice in the last week for a total of about three hours. They discussed "some of the evidence in the case," as well as "the process and [Turner's] rights and what it would mean if he wanted to discharge the Public Defender's Office."

---

[1] The complaint identified "felony domestic assault and/or third degree assault" as the felonies underlying the second-degree felony murder charge.

3

The supervising public defender and Turner then had a discussion before the district court during which they recounted their conversations earlier that week. The supervising public defender asked Turner if it was correct that, despite his advice, Turner "didn't want to try to figure out how to have your relationship with your lawyer[] move forward in a positive way" and that Turner instead wanted to discharge his public defender, even if it meant representing himself. Turner confirmed this was true and said, "Originally, I just wanted a different lawyer. But if it came down to it, I would just represent myself because of a conflict between me and my lawyer." Later in the same exchange before the district court, Turner explained, "And I remember asking you if I could get a different lawyer from your firm, and you told me that wouldn't be possible. So I said, 'Okay. If I can't do that, then I think I might be best just representing myself and doing the research.' " The supervising public defender then told the district court that he had explained to Turner during their conversations earlier in the week that "the concerns that [Turner] was voicing to me I didn't think rose to a conflict, that there—it's not like it was some communication issues." According to the supervising public defender, he was not "comfortable at this time reassigning the case to a different lawyer."

Following this exchange, the district court spoke directly to Turner about self-representation, explaining why it would be a "poor choice" for Turner to represent himself. The district court informed Turner that "the stakes here are 30 to 40 years in prison," adding that "this is functionally the rest of your life we're talking about." Turner confirmed his desire to represent himself. The district court again emphasized the stakes, asking Turner whether he knew "it could be 40 years in prison." Turner stated that he understood. The

4

district court then asked the supervising public defender to go through Turner's written petition to proceed pro se. After further discussion with the supervising public defender, Turner told the district court that he had previously reviewed the petition line-by-line with the supervising public defender, that he understood its contents, and that he understood the stakes of the case.

Near the end of the hearing, the district court made the following observations on the record:

> Well, this is tough for me because I have to say, Mr. Turner, there's a whole lot of guys that I think just blunder into this, and I walk—I probably don't say it on the record but walk away saying, "Oh that guy's just an idiot. He's just—he's digging his grave."
> I don't feel that way about you, Mr. Turner. I will say today I'm finding that you seem lucid. You seem well above average in the degree of thoughtfulness that you're bringing to this decision. That doesn't mean I think the decision's any better. But I do think that your manner has – suggests to me that you have thought about this a lot and you have a recognition of the risks you are taking in waiving your right to an attorney.
> And you appear to be very levelheaded today.

The district court stated that it felt "compelled" to grant Turner's request pursuant to *Faretta v. California,* 422 U.S. 806 (1975). After confirming with Turner "one last time" that he was "absolutely sure" about his decision to proceed pro se, the district court granted Turner's motion, discharged Turner's public defender, and appointed the same public defender as advisory counsel.

### Turner's renewed waiver of counsel and court trial

In June 2023, about one week after Turner waived his right to counsel, a grand jury indicted him for first-degree domestic abuse murder, Minn. Stat. § 609.185(a)(6), and

5

second-degree felony murder, Minn. Stat. § 609.19, subd. 2(1).[2] At a July 5, 2023 hearing, the district court asked Turner if he understood that the indictment replaced the previous charges in the complaint and whether he understood the charges in the indictment. Turner responded that he understood. The district court then observed that the stakes were "considerably higher than the last time that we talked" and asked Turner, "[d]o you still want to continue to represent yourself in this matter?" Turner replied that he did. When asked whether he wanted to talk to advisory counsel about that decision, Turner responded that he had "already discussed it" with his advisory counsel.

Turner then asked the district court to explain "the full max of what could happen for a first degree." The district court responded that the offense "carries a term of life," but that the district court would have to look up whether Turner would be eligible for release. The district court added, "So I guess I'll leave that to you and your research to figure out, because I apologize, I just didn't have that information in front of me. But in either case, it's a long time that you're conceivably looking at if convicted of these offen[s]es." The district court stated that "whether it's life without parole or life with parole in 30 years," it wanted to make sure Turner had thought through his decision to represent himself "in light of the enhanced penalties that you're looking at today." Turner replied that he understood.

Following this conversation, Turner continued to represent himself in pretrial proceedings. Turner filed several motions, which the district court construed as motions requesting, among other things, a probable cause hearing and hearings concerning the

---

[2]     The indictment identified third-degree assault as the offense underlying the second-degree felony murder count.

6

admissibility of prior bad acts and certain statements. Additionally, Turner gave notice of an alternative perpetrator defense. Turner represented himself in several motion hearings before the district court. Advisory counsel was present at each hearing. During some of the hearings, the State called witnesses to testify, and Turner cross-examined the witnesses. The district court regularly provided Turner with information regarding the motions being addressed, the applicable rules of evidence, and any relevant case law or legal standards. When it appeared that Turner needed more help understanding the proceedings, the district court offered additional explanation.

In early 2024, Turner waived his right to a jury trial and represented himself during a court trial based on stipulated facts and evidence. The district court found Turner guilty of both counts in the indictment. At sentencing, the district court convicted Turner of first-degree domestic abuse murder and sentenced him to life in prison with the possibility of supervised release for the conviction.

Turner directly appeals his conviction.

## ANALYSIS

Turner argues that he is entitled to a new trial because his initial waiver of the constitutional right to counsel was invalid and the district court failed to obtain a valid renewed waiver of counsel following the indictment. He contends that his initial waiver of counsel was constitutionally invalid because the district court failed to advise him of all the information required for a knowing, voluntary, and intelligent waiver and because he was misinformed about his ability to request substitute counsel. Turner asserts that his renewed waiver of counsel after the indictment was likewise invalid because the district

7

court failed to ensure that he had all the information necessary to knowingly, voluntarily, and intelligently waive counsel.

Both the United States Constitution and the Minnesota Constitution guarantee a criminal defendant the right to counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. A defendant may waive the constitutional right to counsel if that waiver is knowing, intelligent, and voluntary. *Faretta*, 422 U.S. at 807, 835 (stating that a defendant's waiver of counsel must be knowing and intelligent, and observing that the record showed that the defendant was "voluntarily exercising his informed free will"); *State v. Krejci*, 458 N.W.2d 407, 412 (Minn. 1990) (stating that a defendant's waiver of counsel must be knowing and intelligent); *see also* Minn. R. Crim. P. 5.04 (stating that a district court must not accept a defendant's waiver of counsel "unless the court is satisfied that it is voluntary and has been made by the defendant with full knowledge and understanding of the defendant's rights"). Indeed, when a defendant makes an informed choice to proceed without counsel, he has a constitutional right to do so; a state may not "constitutionally hale a person into its criminal courts and there force a lawyer upon him, even when he insists that he wants to conduct his own defense." *Faretta*, 422 U.S. at 807; *State v. Richards*, 456 N.W.2d 260, 263 (Minn. 1990) (citing *Faretta* for the principle that "criminal defendants [have] a right to represent themselves in state criminal proceedings").

A district court judge has the " 'serious and weighty' " responsibility of ensuring that a defendant's waiver of counsel is constitutionally valid. *State v. Bauer*, 245 N.W.2d 848, 859 (Minn. 1976) (quoting *Westbrook v. Arizona*, 384 U.S. 150 (1966)). In determining whether a defendant's waiver is constitutionally valid, the district court should

examine "the facts and circumstances of the case, including the background, experience, and conduct of the accused." *State v. Rhoads*, 813 N.W.2d 880, 885–86 (Minn. 2012). Specifically, the district court must "comprehensively examine the defendant regarding [his] comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver." *Id.* at 885 (citation omitted) (internal quotation marks omitted). The district court " 'must investigate as long and as thoroughly as the circumstances of the case before him demand.' " *Burt v. State*, 256 N.W.2d 633, 635 (Minn. 1977) (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948)).

Generally, once a defendant has knowingly, voluntarily, and intelligently waived the right to counsel, the defendant need not renew the waiver of counsel at later proceedings. *Rhoads*, 813 N.W.2d at 887. However, "when an intervening event substantially changes the circumstances existing at the time of the initial waiver-of-counsel," a renewed waiver may be required. *Id.* at 887–88. When a renewed waiver is required, the district court's responsibilities as to the initial waiver of counsel apply "with equal force" to the renewed waiver. *Id.* at 889.

Because an invalid waiver of counsel implicates a defendant's right to counsel and the reciprocal right to self-representation, an invalid waiver of counsel is a structural error that requires reversal of a conviction and a new trial. *State v. Camacho*, 561 N.W.2d 160, 170–71 (Minn. 1997).

Before turning to the issues that Turner raises before this court, we first consider the applicable standard of review—which the parties dispute—and clarify the standard of

9

review that appellate courts apply in considering a criminal defendant's waiver of the right to counsel. Then, we address the validity of Turner's initial and renewed waivers of counsel.

I.

We begin by identifying the standard of review that an appellate court must apply in determining whether a defendant's waiver of counsel was knowing, voluntary, and intelligent. In *Rhoads*, we stated that "[t]he clearly erroneous standard controls our review of a district court's finding that a defendant has knowingly, intelligently, and voluntarily waived his right to counsel." 813 N.W.2d at 885. But we also stated that when the facts are undisputed, whether a waiver of counsel was valid is a constitutional issue that is reviewed de novo. *Id.*

Clear error and de novo review are distinct standards. When we apply clear error review, we defer to the district court and uphold the district court's findings unless they are clearly erroneous. *State v. Smith*, 814 N.W.2d 346, 350 (Minn. 2012). A district court's "finding is clearly erroneous when there is no reasonable evidence to support the finding or when an appellate court is left with the definite and firm conviction that a mistake occurred." *Rhoads*, 813 N.W.2d at 885. De novo review means the reviewing court considers the question presented without deference to the district court. *Roberts v. State*, 945 N.W.2d 850, 853 (Minn. 2020). We apply de novo review when considering questions of law. *Danforth v. State*, 761 N.W.2d 493, 495 (Minn. 2009).

The parties disagree about whether clear error or de novo review applies here. Turner argues that we should review de novo the district court's determination that his

waiver of counsel was knowing, voluntary, and intelligent. He notes that he is not challenging the district court's factual findings. Rather, he contends that he is challenging the district court's "ultimate legal conclusion" that his waiver of counsel was knowing, voluntary, and intelligent.

On the other hand, the State argues that we should review the district court's determination for clear error. According to the State, our decision in *Rhoads* characterizes the district court's determination that a waiver is knowing, voluntary, and intelligent as a "finding," and states that "[t]he clearly erroneous standard controls our review of [this] finding." 813 N.W.2d at 885. The State contends that, when a district court makes an "affirmative finding" that a waiver is valid—as the district court did here—the reviewing court should apply clear error review.

We reaffirm that the standard of review we articulated in *Rhoads* applies when an appellate court considers the validity of a defendant's waiver of counsel. A district court's decision regarding a defendant's waiver of counsel involves both factual findings and legal determinations. *Id.* at 884–85; *see also Richards*, 456 N.W.2d at 264 (concluding that a district court's finding of invalid waiver "misapprehends the governing law and is clearly erroneous").

A district court considering a defendant's request to waive counsel makes factual findings. "Whether a waiver of a constitutional right [is] knowing, intelligent, and voluntary *depends on the facts and circumstances of the case*, including the background, experience, and conduct of the accused." *Rhoads*, 813 N.W.2d at 884 (emphasis added). Here, for example, the district court found that Turner appeared "lucid," "levelheaded,"

11

and "thoughtful[]" at the hearing where he initially waived counsel. As noted, an appellate court reviews a district court's factual findings for clear error. *Smith*, 814 N.W.2d at 350.

Based upon the facts and circumstances of the case, a district court must also decide, as a matter of law, whether the defendant's waiver of counsel is knowing, voluntary, and intelligent. This is a legal question that the appellate court reviews de novo. *See Rhoads*, 813 N.W.2d at 885 ("When the facts are undisputed, however, the question of whether a waiver-of-counsel was knowing and intelligent is a constitutional one that is reviewed de novo.").

Having identified the applicable standard of review, we now apply this standard to consider the questions presented here—whether Turner's initial waiver of counsel and renewed waiver of counsel were constitutionally valid.

## II.

Turner contends that his initial waiver was constitutionally invalid for two reasons. First, he argues that the district court failed to provide him with all the information necessary for him to make a knowing and intelligent decision about self-representation. Second, he argues that his waiver was invalid because it was premised on "misinformation" revealed during his on-the-record discussion with the supervising public defender. That misinformation, according to Turner, was his belief that the district court had no authority to appoint substitute counsel.

We note that Turner does not challenge any of the district court's factual findings concerning the facts and circumstances of his waiver. Instead, Turner argues that his waiver of counsel was invalid as a matter of law because it was based on incomplete and

inaccurate information. We consider the constitutional validity of Turner's waiver of counsel de novo.

When accepting a waiver of counsel, district courts "should comprehensively examine the defendant regarding the defendant's comprehension of the charges, the possible punishments, mitigating circumstances, and any other facts relevant to the defendant's understanding of the consequences of the waiver." *State v. Worthy*, 583 N.W.2d 270, 276 (Minn. 1998) (citation omitted) (internal quotation marks omitted). In addition, the Minnesota Rules of Criminal Procedure establish a process that district courts must follow when accepting a waiver of counsel. Rule 5.04, subdivision 1(4), requires a district court to "ensure that defendants charged with a felony who appear without counsel, do not request counsel, and wish to represent themselves, enter on the record a voluntary and intelligent written waiver of the right to counsel." Minn. R. Crim. P. 5.04, subd. 1(4). The rule sets forth the required advisories:

> Before accepting the waiver, the court must advise the defendant of the following: (a) nature of the charges; (b) all offenses included within the charges; (c) range of allowable punishments; (d) there may be defenses; (e) mitigating circumstances may exist; and (f) all other facts essential to a broad understanding of the consequences of the waiver of the right to counsel, including the advantages and disadvantages of the decision to waive counsel.

*Id.*[3] A district court's failure to follow required procedures does not automatically invalidate a defendant's waiver of counsel. If the "particular facts and circumstances" of

---

[3] The criminal procedure rules also include a form "Petition to Proceed as Pro Se Counsel." *See* Minn. R. Crim. P., Form 11.

13

the case show that the defendant knowingly, voluntarily, and intelligently waived counsel, then the waiver was constitutionally valid. *Rhoads*, 813 N.W.2d at 889.

The "particular facts and circumstances" surrounding Turner's waiver indicate that it was knowing, voluntary, and intelligent. *Id.* Those facts and circumstances are as follows.

First, before accepting Turner's waiver of counsel, the district court engaged Turner in a lengthy discussion of the responsibilities and implications of self-representation, comprehensively examining Turner regarding the facts relevant to his "understanding of the consequences of the waiver." *Worthy*, 583 N.W.2d at 276 (citation omitted) (internal quotation marks omitted). The district court informed Turner that "the stakes here are 30 to 40 years in prison," adding that "this is functionally the rest of your life we're talking about." The district court repeatedly explained the consequences of Turner's decision and why he thought it would be a "poor choice" for Turner to represent himself. Throughout this discussion, Turner unequivocally affirmed that he understood the consequences of his decision and wished to represent himself.

Second, the district court's uncontested factual findings regarding Turner's demeanor and comprehension during the hearing suggest that Turner's waiver was knowing and intelligent. Turner does not dispute the district court's factual findings that he appeared "lucid" and "levelheaded;" that he seemed "well above average in the degree of thoughtfulness" in his decision-making; and that his "manner" suggested that he had "thought about this a lot" and had "a recognition of the risks" he was taking in waiving his constitutional right to an attorney.

14

Third, because Turner consulted with counsel before waiving counsel, we can "reasonably presume" that Turner was informed of all information necessary for a valid waiver of counsel. *Id.* (citation omitted) (internal quotation marks omitted). In *Worthy*, we held that, despite some deficiencies in the waiver-of-counsel proceeding, the defendants' waiver of counsel was nonetheless valid because they had consulted with counsel beforehand. *Id.* There, "the trial court's on-the-record inquiry regarding waiver did not include a recitation of the charges or potential punishments." *Id.* But because the defendants had previously been represented by counsel for over a month before discharging counsel, we presumed that counsel had advised the defendants of any information relevant to defending the case and the perils of proceeding pro se. *Id.* Here, the record shows that Turner was represented by counsel for approximately six months before discharging counsel. Furthermore, immediately before discharging counsel, Turner met with the supervising public defender twice, for a total of three hours. In these meetings, Turner and the supervising public defender talked about "the process and [Turner's] rights and what it would mean if he wanted to discharge the Public Defender's Office." Thus, even if the district court's inquiry did not include a sufficient discussion of Turner's charges and defenses, we can presume that Turner learned of this information while he was represented by counsel.

Fourth, Turner's written waiver of counsel demonstrates that his choice to represent himself was knowing, voluntary, and intelligent. Turner signed a petition to proceed as pro se counsel, which he reviewed with the supervising public defender and the district court at the waiver hearing. In the written waiver, Turner indicated that he had read the

15

complaint, that he understood the charges made against him, and that he understood the responsibilities he would have if the court granted the petition. The comments to Rule 5 state: "In practice, a Petition to Proceed As Pro Se Counsel may fulfill the dual requirements of providing the defendant with the information necessary to make a voluntary and intelligent waiver of the right to counsel as well as providing a written waiver." Minn. R. Crim. P. 5 cmt; *see also State v. Dahlin*, 753 N.W.2d 300, 307 (Minn. 2008) (noting that while the commentary to the Rules of Criminal Procedure does not bind this court, it provides guidance which courts may follow). We agree. Turner's execution of a written waiver with the assistance of an attorney suggests that his waiver was voluntary, knowing, and intelligent.

Turner asserts that the district court failed to sufficiently advise him of three of the types of information required under Rule 5.04: (1) the nature of the charges, (2) the offenses included within the charges, and (3) possible defenses to the charged offenses. According to Turner, because the district court did not adequately advise him of these three categories of information under Rule 5.04, he did not have the necessary information to understand the significance of his decision to represent himself or the consequences of that decision. He argues that his waiver of counsel was therefore constitutionally invalid because it was not knowing and intelligent.

Moreover, Turner argues that his waiver of counsel was invalid because it was premised upon "misinformation" provided by the supervising public defender—and which the district court never corrected—that substitute counsel was not available to Turner. Turner argues that this "misinformation" rendered his waiver uninformed and involuntary

because he mistakenly believed that his only two options were to continue with appointed counsel or represent himself.

We agree with Turner that the district court did not address each of the advisories listed in Rule 5.04. Specifically, the district court did not advise Turner of (1) the nature of the charges, (2) the offenses included within the charges, and (3) "that there may be defenses" to the charged offenses. We cannot conclude on this record, however, that these deficiencies rendered his waiver of counsel unknowing and unintelligent.[4] Based on our decision in *Worthy*, we can reasonably presume that Turner was aware of this information because, at the time he filed his petition to proceed pro se, he was represented by counsel and consulted with counsel in connection with the discharge of his public defender and waiver of counsel.

We likewise reject Turner's argument that his waiver of counsel was constitutionally invalid because he was "misinformed" about the availability of substitute counsel. Importantly, Turner never requested substitute counsel during the proceedings below, and he does not assert on appeal that the district court had any obligation to appoint substitute counsel or consider appointing substitute counsel.[5] Turner's argument instead

---

[4] Turner does not argue that the district court's failure to provide each of the advisories in Rule 5.04 automatically invalidated his waiver of counsel. Rather, he argues that, because the district court did not comply with the rule, his waiver of counsel was not knowing and intelligent, as constitutionally required. The question of whether a district court's failure to comply with Rule 5.04 automatically invalidates a waiver of counsel is not before us.

[5] A defendant does not have a constitutional right to choose their own attorney. *State v. Gassler*, 505 N.W.2d 62, 70 (Minn. 1993) ("While a defendant has the right to court

17

asks us to infer from his on-the-record discussion with the supervising public defender that he was improperly advised about the availability of substitute counsel. We cannot make such an inference from the limited remarks in the record. The record shows that Turner stated that he had requested "a different lawyer" from the supervising public defender's office. Turner stated that the supervising public defender had told him that it "wouldn't be possible" for Turner to be assigned to a different attorney. Responding to Turner's statement, the supervising public defender told the district court that he had not been "comfortable at this time reassigning the case to a different lawyer." The record contains no details regarding the discussion between Turner and the supervising attorney regarding substitute counsel. And it does not reveal Turner's understanding of his ability to obtain substitute counsel. On the record before us, we cannot conclude that Turner was misinformed about the availability of substitute counsel or that misinformation about the availability of substitute counsel influenced Turner's decision to represent himself.

---

appointed counsel, he does not have the right to choose the attorney; he must accept the attorney appointed by the court."). District courts grant an indigent defendant's request for different counsel "only if exceptional circumstances exist and the demand is timely and reasonably made." *State v. Vance*, 254 N.W.2d 353, 358 (Minn. 1977). A circumstance is exceptional only when it affects counsel's "ability or competence to represent the client." *State v. Gillam*, 629 N.W.2d 440, 449 (Minn. 2001). Additionally, "a defendant's general dissatisfaction with appointed counsel does not amount to an exceptional circumstance." *State v. Munt,* 831 N.W.2d 569, 586 (Minn. 2013) (citation omitted) (internal quotation marks omitted). A district court is required to "conduct a searching inquiry" into whether a defendant's complaints warrant the appointment of substitute counsel only "[w]hen the defendant voices serious allegations of inadequate representation." *Id.* (citation omitted) (internal quotation marks omitted).

18

Based on the facts and circumstances in the record, we determine that Turner's waiver of his constitutional right to counsel was knowing, intelligent, and voluntary. Thus, the waiver was constitutionally valid.

III.

Finally, we address Turner's argument that his renewed waiver of counsel, following his indictment for first-degree domestic abuse murder and second-degree felony murder, was constitutionally invalid. Turner argues that his renewed waiver of counsel was not knowing, voluntary, and intelligent because the district court failed to conduct a second comprehensive waiver-of-counsel inquiry before allowing him to continue representing himself. This argument presents a question of law that we review de novo. *See Rhoads*, 813 N.W.2d at 885.

Generally, a defendant who has knowingly, intelligently, and voluntarily waived the right to counsel need not renew the waiver of counsel at subsequent proceedings. *Id.* at 887. However, when "an intervening event substantially changes the circumstances existing at the time of the initial waiver-of-counsel," a renewed waiver may be required. *Id.* In *Rhoads*, we concluded that the State's amendment of a charge that doubled the maximum possible punishment constituted a substantial alteration in circumstances that required a renewed waiver. *Id.* at 888.

When a renewed waiver is necessary, a district court must determine that a defendant's decision to continue self-representation is knowing, voluntary, and intelligent. In *Worthy*, we stated that "[w]hether a waiver of a constitutional right is valid depends 'upon the particular facts and circumstances surrounding that case, including the

19

background, experience, and conduct of the accused.' " 583 N.W.2d at 275–76 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). In *Rhoads*, we directed district courts to apply "the analysis articulated in *Worthy*" and conduct a "comprehensive examination of the defendant's understanding of the increase in the maximum possible punishment" when a new charge substantially changes the circumstances, requiring a new waiver. 813 N.W.2d at 889.

Turner argues that his indictment for first-degree domestic abuse murder increased his maximum possible sentence, which constituted a substantial change in circumstances requiring a new waiver of counsel. Although Turner acknowledges that, unlike in *Rhoads*, the maximum sentence did not *double*, he argues that life imprisonment with a possibility of supervised release after 30 years was "an even more serious possible punishment" than a doubling of his maximum sentence. Turner further contends that the district court did not obtain a valid renewed waiver of counsel, as required by *Rhoads*. He asserts that the district court failed to conduct the comprehensive inquiry required by case law and Minnesota Rule of Criminal Procedure 5.04, subdivision 1(4). For example, Turner points out that, although the district court told him that he was facing a life sentence, when he asked about the maximum sentence, the district court was unable to immediately confirm whether he would be eligible for supervised release. Turner also observes that the district court never advised him that he still had a right to counsel, that advisory counsel could still assume representation, and that there may be defenses to the first-degree murder charge, among other information required under Rule 5.04.

But Turner misapprehends what we required in *Rhoads*. *Rhoads* does not mandate a second comprehensive waiver proceeding when a new charge substantially alters the circumstances in a case. Instead, in *Rhoads* we directed district courts to apply the "*Worthy* analysis" in "determin[ing] whether a defendant has validly renewed his waiver-of-counsel *with an understanding of the increase in maximum possible punishment*." 813 N.W.2d at 889 (emphasis added). Thus, a district court is only required to conduct the *Worthy* analysis—examining the "particular facts and circumstances" surrounding the case— regarding *the changed circumstance or circumstances*. When that changed circumstance is a charge authorizing an increased punishment, for example, the district court must ensure that the defendant understands the increased punishment.

We assume without deciding that Turner's indictment for first-degree domestic abuse murder was an intervening event that substantially changed the circumstances existing at the time of Turner's initial waiver of counsel, requiring a renewed waiver. Based on this assumption, we conclude that Turner's renewed waiver was knowing, voluntary, and intelligent. The district court explained to Turner that the new charge of first-degree domestic abuse murder increased the maximum possible punishment that Turner faced to "a term of life." After providing this information, the district court asked Turner if he wished to continue representing himself. Turner affirmed his desire to continue with self-representation. The district court asked Turner whether he wished to speak with his advisory counsel regarding his decision to continue representing himself. Turner responded that he and his advisory counsel had "already discussed it."

21

Turner now argues that the district court's acceptance of his renewed waiver was flawed because the district court did not know whether the new charge required a life sentence *without* the possibility of release or *with* the possibility of release. We conclude that this did not impact the constitutional validity of Turner's renewed waiver. The district court correctly informed Turner that the new charge carried a sentence of life imprisonment. Although the district court advised Turner that it was possible the charge carried a sentence of life imprisonment *without* the possibility of release, the maximum sentence for first-degree domestic abuse murder is life imprisonment *with* the possibility of release. *See* Minn. Stat. § 244.05, subd. 4(b) (providing that an inmate serving a mandatory life sentence under Minn. Stat. § 609.185(a)(6) must not be given supervised release until "having served a minimum term of 30 years"); Minn. Stat. § 609.185(a)(6) (defining the offense of first-degree domestic abuse murder). Thus, the district court advised Turner of the possibility of an even *greater* sentence than the one Turner faced. This information was sufficient to notify Turner of the possibility of increased punishment.

Because the district court advised Turner of the increased maximum punishment for first-degree domestic abuse murder, and Turner reaffirmed his desire to represent himself, his renewed waiver of counsel was knowing, voluntary, and intelligent. We therefore conclude that Turner's renewed waiver was constitutionally valid.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the district court.

Affirmed.

22