**Ricky Wayne BURT, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**Nos. 46309 and 46311.**

Supreme Court of Minnesota.

July 15, 1977.

C. Paul Jones, Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Richard G. Mark, Asst. Atty. Gen., Craig H. Forsman, Sp. Asst. Atty. Gen., St. Paul, Julius E. Gernes, County Atty., Winona, for respondent.

PER CURIAM.

This is a postconviction proceeding in which Ricky Wayne Burt, now incarcerated

at the St. Cloud state reformatory, seeks relief from a number of convictions for burglary, Minn.St. 609.58, subd. 2(3), burglary with a tool, Minn.St. 609.58, subd. 2(1)(a) and aggravated damage to property, Minn.St. 609.595, subd. 1(3).[1] Defendant was not represented by counsel when he entered the guilty pleas upon which the convictions were based. Because we have concluded that the record inadequately demonstrates that defendant's waiver was knowing and intelligent, we reverse the order of the district court denying postconviction relief.

On August 31, 1973, defendant was arrested and charged with the burglary of the Winona Excavating Company. After being advised of his rights, defendant gave a voluntary statement to a deputy sheriff in which he confessed his guilt. Thereafter, on September 4, 1973, a complaint was filed in county court charging defendant with burglary, burglary with a tool, and aggravated damage to property. The court, concerned that defendant was not represented by counsel, advised defendant a number of times that he had a right to counsel and that if he could not afford one, one would be provided. Defendant, however, insisted that he did not want one, saying that he did not wish to contest anything and that he planned to plead guilty in district court.

At the arraignment in district court on September 17, 1973, the court explained defendant's rights to him, including his right to counsel, but defendant again insisted that he did not desire to have counsel or to exercise any of his other rights. Defendant then pleaded guilty to the information which, like the complaint, charged him with burglary, burglary with a tool, and aggravated damage to property. The court accepted this plea and ordered a presentence investigation, with defendant being continued on bail pending the completion of that investigation.

On October 2, 1973, while on bail, defendant was shot in connection with an incident involving the unauthorized use of a boat belonging to someone else. Officers of the police department and the sheriff's office questioned defendant while he was in the hospital and obtained a voluntary statement from defendant concerning the boat incident and his role in a number of burglaries in the area.

Thereafter, on October 10, 1973, defendant again appeared in county court and six complaints were filed against him. Again defendant was advised of his continuing right to counsel, but defendant still insisted on waiving this right.

On November 5, 1973, while still on bail, defendant was arrested for the burglary of the Sirloin Stockade, and defendant again gave a voluntary statement to the police. Two days later, on November 7, 1973, defendant appeared once again in county court and was charged with burglary and burglary with a tool. Defendant again waived his right to counsel.

Defendant's arraignment on all these outstanding charges occurred in district court on November 9, 1973. Again defendant appeared without counsel and, when advised of his right to have a court-appointed attorney, restated that he did not want one. The informations were then read to defendant and he was advised of the rights he would be waiving as well as the maximum sentence he could receive if he pleaded guilty. Defendant then entered guilty pleas to all the charges, and the court, after inquiring concerning the factual bases for the pleas, accepted them. The court then imposed sentence.

■ As the United States Supreme Court recently reaffirmed in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562

1. In all, defendant was convicted of theft, aggravated damage to property, three burglaries, and four aggravated burglaries, and was sentenced to 5-year terms for the theft and each of the burglaries and 20-year terms for the aggravated burglaries, the terms to run concurrently. Defendant was not sentenced for the offense of aggravated damage to property. The postconviction court granted defendant relief from the conviction for theft, but not from the other convictions. Pursuant to the state's request, the state's appeal from that part of the court's order vacating the conviction for theft is dismissed.

(1975), a criminal defendant generally has a right to waive counsel and proceed pro se even at trial. However, the court in *Faretta* made it clear that any waiver of the right to counsel must be a knowing and intelligent waiver. As stated in *Faretta*:

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits. *Johnson v. Zerbst,* 304 U.S., [458] at 464–465 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466, 146 A.L.R. 357, 362]. Cf. *Von Moltke v. Gillies,* 332 U.S. 708, 723–724 [92 L.Ed. 309, 320, 68 S.Ct. 316, 323] (plurality opinion of Black, J.). Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann,* 317 U.S., [269] at 279 [87 L.Ed. 268, 275, 63 S.Ct. 236, 242, 143 A.L.R. 435, 441].

"Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the 'ground rules' of trial procedure." 422 U.S. 835, 95 S.Ct. 2541, 45 L.Ed.2d 581.

*Von Moltke v. Gillies,* 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), cited by the majority in *Faretta,* sets forth standards which aid in determining whether a waiver is knowing and intelligent:

" * * * [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." 332 U.S. 723, 68 S.Ct. 323, 92 L.Ed. 321.

One way for a trial court to help ensure that a defendant's waiver of counsel is knowing and intelligent would be to provide a lawyer to consult with the defendant concerning his proposed waiver, at least where the defendant has not previously consulted with one. Section 7.3 of the A. B. A. Standards for Criminal Justice, Providing Defense Services (Approved Draft, 1968), requires the temporary appointment of counsel to consult with a defendant who has never consulted with counsel and wants to proceed without one. While Rule 5.02, subd. 2, Rules of Criminal Procedure, does not require temporary appointment of counsel, it does permit the court to do this, and we strongly encourage the liberal use of this authority.

■ In this case, as we have demonstrated, petitioner was advised on numerous occasions of his right to counsel and he at all times insisted that he did not need counsel. At the time petitioner's plea was accepted, the court apparently was unaware of any facts which would cast doubt on petitioner's capacity to make an intelligent decision whether to waive counsel. However, the presentence investigation report that the court received revealed that peti-

tioner, who was 18 years old, had only a tenth grade education and that his scores on I. Q. tests were consistently low (79 in 1963, 69 in 1966, and 65 in 1970), suggesting strongly that petitioner was of considerably lower than average intelligence. In retrospect, we believe that after reading this report the court should have reopened the matter for the purpose of making a more detailed inquiry into petitioner's capacity to intelligently waive counsel. See, *State v. Bauer*, Minn., 245 N.W.2d 848 (1976). The record, viewed as a whole, inadequately demonstrates that petitioner's waiver was knowing and intelligent, and, accordingly, we must reverse the order denying postconviction relief.

Appeal No. 46309: Reversed.

Appeal No. 46311: Dismissed.