Peter SHOEN, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. C7–01–2018.

Supreme Court of Minnesota.

July 25, 2002.

Joseph Margulies, Margulies & Richman, Minneapolis, Attorney for Appellant.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, Lamar Piper, Watonwan County Attorney, St. James, Attorneys for Respondent.

1. A thorough statement of the facts and circumstances surrounding the murder can be found in *State v. Shoen,* 578 N.W.2d 708, 710–13 (Minn.1998), and *State v. Shoen,* 598 N.W.2d 370, 371–73 (Minn.1999). Only those facts necessary for the resolution of the issues presented on this appeal will be repeated here.

## OPINION

PAGE, Justice.

This appeal is from the denial of Peter Shoen's petition for postconviction relief. Shoen was convicted of first-degree premeditated murder and sentenced to life imprisonment for the March 1, 1996, murder of his wife, Kimberly Shoen.[1] On direct appeal, Shoen argued that he was deprived of his constitutional right to a fair trial because he was forced to wear a leg restraint throughout the trial. Shoen also raised a number of other issues by way of a supplemental pro se brief.

While we rejected each of the claims raised in Shoen's supplemental pro se brief, we held that the district court erred in ordering Shoen to wear the leg restraint and remanded the case to the district court for a *Schwartz* hearing to determine whether the jurors were aware of the restraint and, if so, whether the jury's verdict was "surely unattributable" to the restraint. *State v. Shoen,* 578 N.W.2d 708, 716, 718 (Minn.1998). After holding the *Schwartz* hearing, the district court concluded that the jury's verdict was surely unattributable to the error of requiring Shoen to wear the restraint during his trial. *State v. Shoen,* 598 N.W.2d 370, 374. On review, this court affirmed. *Id.* at 379.

In his petition for postconviction relief, Shoen alleged: (1) that his conviction violated the Fourteenth Amendment of the United States Constitution because he was incompetent to stand trial; (2) that the district court erred by failing to raise the issue of his competency on its own initia-

tive;[2] and (3) that his trial counsel was ineffective due to its failure to reasonably investigate or raise the issue of Shoen's competency. In support of his claims, Shoen relied principally on a series of reports prepared by a licensed psychologist and a nurse, both of whom had contact with Shoen while he was in prison awaiting trial.

The postconviction court conducted an evidentiary hearing on Shoen's petition. At the hearing, the psychologist's and nurse's reports were admitted as evidence. In addition, the postconviction court heard testimony from Shoen's trial counsel and Dr. George Komaridis, a licensed psychologist hired by trial counsel to examine Shoen before his trial. The postconviction court made the following findings of fact regarding Shoen's competence to stand trial: "[i]n preparation for [Shoen's] trial * * *, [trial counsel] had [Shoen] examined by Dr. George Komaridis, who had performed over 100 Rule 20 examinations to determine competency to stand trial"; "Dr. Komaridis did not observe any conduct by [Shoen] at any time prior to or during trial, which would have alerted him to the possible need for a Rule 20 examination * * *. Nor did Dr. Komaridis at any time suggest to [trial] counsel that a Rule 20 examination should be performed"; Shoen's "demeanor during the entire proceedings was rational, coherent, perceptive, and candid"; "[n]one of the parties involved in [Shoen's] murder trial * * * considered [Shoen's] behavior suspect, necessitating a Rule 20 psychological examination"; Shoen "did not have an inability to function, analyze, or respond appropriately to questions asked at anytime throughout the course of the entire proceedings in this matter"; Shoen's "testimony was rational, responsive, coherent, and consistent with the facts presented and any inferences that were available to the jury"; Shoen "was aware of the seriousness of the charges before him and of the potential consequences of those actions if he was found guilty by a jury"; Shoen's "reactions throughout these proceedings were the natural result upon his realizations of the consequences of killing his wife both for himself, his children, and other relatives"; Shoen "was obviously under stress before and during the murder trial, but at no time did this stress interfere with his participation in his defense"; and "[t]he record is devoid of any objective, competent evidence that [Shoen] was not competent to assist his trial attorneys during one or more critical stages of the proceedings against him."

The postconviction court concluded that:

At all times prior to and during the trial, [Shoen] was competent to stand trial within the requirements of Minn. R.Crim. Proc. 20.01, because [Shoen] understood the proceedings against him, [Shoen] participated in his own defense, and [Shoen] was able to consult with his trial attorneys with a reasonable degree of rational understanding.

Similarly, the postconviction court concluded that Shoen "failed to show by a preponderance of the evidence that he was incompetent to stand trial or that he was unable to assist in his defense during any critical stage of the proceedings against him," and that Shoen "also failed to show that he was incompetent during one or more critical stages of the proceedings against him."

In this appeal, Shoen claims that the postconviction court abused its discretion by deciding that he was competent to stand trial and that he received effective assistance of trial counsel. We affirm the postconviction court's decision.

**2.** Shoen does not raise this second claim on appeal.

## I.

■ A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity. *Hummel v. State*, 617 N.W.2d 561, 563 (Minn.2000); *State ex rel. Kons v. Tahash*, 281 Minn. 467, 474, 161 N.W.2d 826, 831 (1968). A petitioner for postconviction relief has the burden of establishing the facts alleged in the petition by a fair preponderance of the evidence. Minn.Stat. § 590.04, subd. 3 (2000); *Voorhees v. State*, 627 N.W.2d 642, 648 (Minn.2001). We afford great deference to a postconviction court's findings of fact and will not reverse the findings unless they are clearly erroneous. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn. 2001); *Robinson v. State*, 567 N.W.2d 491, 495 (Minn.1997). The decisions of a postconviction court will not be reversed absent an abuse of discretion, and we will consider only whether there is sufficient evidence to support the postconviction court's conclusions. *State v. Lindsey*, 632 N.W.2d 652, 657 (Minn.2001); *Fox v. State*, 474 N.W.2d 821, 824 (Minn.1991). Each of Shoen's claims must be reviewed under this standard.

## II.

■ Shoen claims that his conviction violated the Due Process Clause of the Fourteenth Amendment because he was incompetent to stand trial and that he was deprived of his Sixth Amendment right to effective assistance of trial counsel. Resolution of both of these claims ultimately hinges on whether Shoen was competent to stand trial.[3]

■ A criminal defendant is incompetent to stand trial if he or she either (1) "lacks sufficient ability to consult with a reasonable degree of rational understanding with defense counsel" or (2) "is mentally ill or mentally deficient so as to be incapable of understanding the proceedings or participating in the defense." Minn. R.Crim. P. 20.01, subd. 1; *State v. Hunt*, 615 N.W.2d 294, 300 (Minn.2000); *see also Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (stating the test for criminal defendant's competence to stand trial is "whether he has sufficient present ability to consult with [counsel] with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him"). Based on our careful and thorough review of the record and the standard of review we must apply in this case, we conclude that the findings made by the postconviction court relating to Shoen's competency to stand trial are not clearly erroneous, and we therefore defer to those findings. *See Dukes*, 621 N.W.2d at 251; *Robinson*, 567 N.W.2d at 495. Furthermore, the evidence before us provides ample support for the postconviction court's conclusion that Shoen was competent "[a]t all times prior to and during [his] trial." We therefore hold that the postconviction court did not abuse its discretion in denying Shoen's petition for postconviction re-

---

**3.** To prevail on his ineffective assistance of counsel claim, Shoen must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that the outcome would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Rhodes*, 627 N.W.2d 74, 86 (Minn.2001). An insufficient showing on either of these points defeats Shoen's claim. *See Strickland*, 466 U.S. at 698, 104 S.Ct. 2052. Because Shoen contends that, but for counsel's allegedly deficient performance, he would have been found incompetent to stand trial, Shoen must demonstrate a reasonable probability that he was incompetent to stand trial. *See Williamson v. Ward*, 110 F.3d 1508, 1519 (10th Cir.1997); *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir.1990).

lief. *See Lindsey,* 632 N.W.2d at 657; *Fox,* 474 N.W.2d at 824.

Affirmed.