**Richard Brian BRUESTLE, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A05–1707.

Supreme Court of Minnesota.

Aug. 10, 2006.

Kyle D. White, St. Paul, MN, for Appellant.

Michael A. Hatch, Minnesota Attorney General, Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant Ramsey County Attorney, St. Paul, MN, for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

On March 5, 2003, appellant Richard Brian Bruestle pleaded guilty to and was sentenced to life imprisonment for the stabbing and shooting death of his aunt. Bruestle did not file a direct appeal or a motion to withdraw his plea within the time allowed for a direct appeal. Bruestle subsequently retained new counsel and filed a postconviction petition, claiming that he was incompetent to plead guilty and that his trial counsel was ineffective due to counsel's decision not to fully pursue an insanity defense or make an incompetency argument before Bruestle pleaded guilty. The postconviction court denied Bruestle's petition for relief without holding an evidentiary hearing. We affirm.

On December 7, 2002, Saint Paul police officers responded to a 911 call and, upon arriving at the home of Lorene Nell McIntyre, discovered appellant Richard Brian Bruestle outside the home with blood on his clothing. Bruestle told the officers to shoot him because he had a gun and would shoot them, but instead of continuing to confront the officers, Bruestle threw his gun on the ground and apparently surrendered. Bruestle told the officers that he had killed a woman. He said that he had stabbed the woman 15 times and that there were no bullets in his gun because he had "filled the victim full of lead." Nearby, the police found McIntyre's body.

McIntyre was Bruestle's aunt, with whom he was living at the time of her death. Bruestle told the police officers that he and McIntyre had been arguing about the taste of her chili, and as a result, McIntyre told Bruestle to get out of the house. Bruestle further told the officers that he believed McIntyre attempted to phone 911 as a result of the argument, and that infuriated him. The officers arrested Bruestle at the scene and transported him to jail.

Bruestle was indicted by a grand jury for murder in the first degree, in violation of Minn.Stat. § 609.185(a)(1) (2004); Minn. Stat. § 609.11 (2004), *invalidated by State v. Barker*, 705 N.W.2d 768 (Minn.2005) (amended 2006); and murder in the first degree—life without release, in violation of Minn.Stat. §§ 609.185(a)(1), 609.11; Minn. Stat. § 609.106, subds. (1)(b), 2(3) (2004) (amended 2005).[1] A public defender was appointed to defend Bruestle, and the public defender made a motion for a mental examination pursuant to Minn. R.Crim. P. 20.01 and 20.02. The district court ordered the mental examination to determine both Bruestle's competency and his mental condition at the time of the homi-

---

1. Murder in the first degree—life without release is available as a possible charge when the defendant has previously been convicted of a "heinous crime" less than 15 years before the murder. Minn.Stat. §§ 609.185(a)(1), 609.11, 609.106, subds. (1)(b), 2(3). As Bruestle had been convicted of rape less than 15 years before his aunt's murder, he qualified to be charged with murder in the first degree—life without release.

cide.[2] At this time, the public defender submitted a request for funding for a Rule 20 examination by an expert. The public defender received a response from the chief public defender, which stated:

We will be having problems with our expert budget soon. This is the type of case that needs experts but we need your cooperation to keep expenses down. If Owen Nelson tells you (and you need to ask) at an early point that he cannot help you, cancel the remainder of his work. We do not need another report which echoes the courts [sic].

District court records indicate—and the postconviction court found—that Dr. Nelson visited Bruestle in jail on December 19, 2002, for an unknown period of time.[3] The district court record does not indicate that Nelson generated a report regarding his visit(s) with Bruestle. On January 30, 2003, the public defender withdrew the motion for a Rule 20 evaluation, stating that "Mr. Bruestle has since stabilized * * *. I think he's seeing a psychologist [at Ramsey County Adult Detention Center] and getting some medications. So at this time I don't * * * see any need to have a Rule 20.01 and 20.02 evaluation * * *." Bruestle then entered a plea of not guilty.

On March 5, 2003, Bruestle changed his plea and entered a plea of guilty to first-degree premeditated murder. Minn.Stat. §§ 609.185(a)(1), 609.11. Apparently in exchange for this plea to murder in the first degree, the state dismissed the life without release count. At the plea hearing, the public defender told the district court that Bruestle was "very adamant about taking responsibility for his actions, despite my prodding to suggest that there is nothing to lose by going to trial." Bruestle's waiver of his rights was put on the record, and, during this part of the proceedings, his counsel specifically questioned Bruestle regarding his waiver of a mental illness defense. The exchange went as follows:

Public defender (PD): Richard, you're— there are some defenses you'd be waiving by entering this plea here as well. You told me you were drinking that day, and you're waiving an intoxication defense; do you understand that?

Bruestle (B): Right, yes.

P.D.: And the other defense we talked about is a mental illness defense?

B.: I understand.

P.D.: Finally, I think you've got some history of mental illness; you're taking medication right now?

B.: Correct.

P.D.: Is that affecting the way you're thinking here today?

B.: It's actually helping.

P.D.: So, you're clear-headed?

B.: Yes.

P.D.: You understand what's going on here today?

B.: Yes.

P.D.: Is this really what you want to do to take care of your case here today?

**2.** Minnesota Statutes § 611.026 (2004) offers an insanity defense—often referred to as a *"M'Naghten"* defense—to defendants who can prove that, at the time of the offense, they were "laboring under such a defect of reason, from [a mental illness or mental deficiency], as not to know the nature of the act, or that it was wrong." *See also* Minn. R.Crim. P. 20.02. Additionally, section 611.026 provides that no one may be tried for a crime if he is incompetent to stand trial due to mental illness or mental deficiency. *See also* Minn. R.Crim. P. 20.01.

**3.** Bruestle's current counsel stated in an affidavit that he spoke to Nelson and Nelson stated that he had seen Bruestle on three occasions: once in December 2002, once in January 2003, and once in February 2003.

B.: I deserve it.

Following this exchange, the court made further inquiry into Bruestle's mental illnesses and mental condition and apparently satisfied itself that Bruestle was competent to proceed with the plea. Bruestle then affirmed for the court that he thought his public defender had given him good counsel and had been supportive and helpful.

In laying the factual basis for his plea, Bruestle stated that he had been living with McIntyre for about 90 days before her murder. Bruestle testified that he sometimes argued with McIntyre, and that on December 7, 2002, they were arguing when he took a knife and began stabbing her and that she ran outside of the house. Bruestle agreed with the autopsy report that he stabbed McIntyre over 30 times. He also testified that after stabbing McIntyre multiple times, he went back into the house, retrieved a gun, brought it back outside, and shot McIntyre five times, emptying the gun in the process. He said that he then went back into the house to get more bullets because he intended to shoot himself. He stated that when he left the house, he confronted the police officers, spoke to them, surrendered, and was arrested. Following Bruestle's testimony about the facts surrounding McIntyre's death, the district court convicted Bruestle and sentenced him to the statutory sentence of life imprisonment.

On October 2, 2003, while in prison for McIntyre's murder, Bruestle attacked a fellow inmate and cut the inmate's throat, apparently acting without provocation. The district court hearing the prison assault case ordered that a Rule 20 mental evaluation be performed to determine Bruestle's sanity at the time of the attack and his competence to proceed to trial. In addition to the court-ordered evaluation, Bruestle's counsel—a different attorney from the counsel who represented Bruestle in the homicide proceeding—retained an expert to perform an additional Rule 20 evaluation.

Meanwhile, on January 26, 2004, Bruestle, with the assistance of new counsel, filed the current petition for postconviction relief, asking that the judgment of conviction and sentence against him for McIntyre's murder be vacated and a new trial ordered or, in the alternative, that an evidentiary hearing be held or that his sentence be reduced. Bruestle based his request for relief on his claim that he was incompetent to plead guilty and that his trial counsel was ineffective because he did not pursue an insanity defense or make an incompetency argument.

As part of the postconviction proceeding, the state and the defense submitted three mental evaluations of Bruestle. One is a brief evaluation done to determine whether Bruestle was disabled for the purposes of receiving social security benefits; the other two are the Rule 20 evaluations done regarding the prison throat-cutting incident, one of which was done by the court-appointed evaluator and the other by Bruestle's expert. All the evaluations recounted Bruestle's mental health and criminal history. According to the evaluations, at the age of 14 Bruestle held two women at knifepoint and was convicted of raping one of them. Since then he has been in prison for most of his life for various crimes and has been a consistently violent and unpredictable inmate.[4] He has also habitually abused several substances, including alcohol, marijuana, and inhalants such as gasoline, and has used cocaine, heroin, and methamphetamine.

---

4. The Rule 20 evaluations indicate that Bruestle has been convicted of several crimes, including robbery, assault, and terroristic threats.

All three of the experts whose evaluations were submitted in this case agreed that Bruestle has low intelligence and mental disturbances, but they did not all agree on the extent of Bruestle's mental problems or whether he qualifies as mentally retarded. Dr. Robert Barron, the social security disability evaluator, concluded that Bruestle had sufficient mental ability to perform competitive unskilled labor. Dr. Gregory Hanson, the court-appointed Rule 20 evaluator, concluded that Bruestle was competent to proceed to trial at the time of their interview.[5] Dr. Maureen Hackett, the expert hired by Bruestle, concluded that Bruestle suffers from a cognitive deficit, has never functioned in "an adaptive manner," and might have brain damage from inhalant use. None of the experts offered an opinion as to whether Bruestle was competent to plead guilty to first-degree murder when he did so on March 5, 2003.

Neither the defense nor the state has provided expert testimony regarding Bruestle's mental state at the time he killed McIntyre. In the court-ordered Rule 20 evaluation regarding the prison throat-cutting incident, Dr. Hanson concluded that Bruestle did not qualify for an insanity defense. Dr. Hanson stated his opinion that Bruestle was psychopathic, but not psychotic, at the time of the throat-cutting incident, noting that "Mr.

Bruestle is paranoid, but this paranoia is mild to moderate in nature and is an aspect of his severe antisocial personality." Bruestle's expert, Dr. Hackett, disagreed, stating that "Mr. Bruestle's assault of another inmate on October 2, 2003 was a completely unprovoked attack in response to paranoid delusions."

As part of the postconviction proceedings, the state asked Bruestle to waive his attorney-client privilege so that the state could obtain information from Bruestle's trial counsel regarding the investigation done into Bruestle's mental state. But Bruestle refused to waive this privilege. He also refused to waive his medical privilege relating to his mental condition, so the state apparently was unable to obtain information from Dr. Nelson regarding his evaluation of Bruestle. The postconviction court then denied relief without an evidentiary hearing on June 29, 2005. Bruestle appealed the postconviction court's denial of relief to our court.

 "A petition for postconviction relief is a collateral attack on a conviction that carries a presumption of regularity." *Hummel v. State*, 617 N.W.2d 561, 563 (Minn.2000). "A petitioner for postconviction relief has the burden of establishing the facts alleged in the petition by a fair preponderance of the evidence." *Shoen v.*

---

**5.** Part of Hanson's interview with Bruestle regarding Bruestle's competence was recorded as follows:

The defendant noted that he has heard of the *insanity plea*. He defined this as "It means that at the time you committed your crime, you were insane." He was asked to define the term "insane." He stated, "You're not mentally competent, maybe." He was asked whether he would consider such a plea in the present case. He responded to this by stating, "A doctor once told me that he thought I was crazy, but not insane." He was asked his understanding of the difference between "crazy" and "in-

sane." He stated, "With crazy, you do a lot of spontaneous things. Humorous or comical, but you know right from wrong. In this case, I might be insane, because I didn't know right from wrong. Most people would say I was wrong, but considering the circumstances, I didn't feel I was wrong." The defendant was asked to define the term *plea bargain*. He stated, "A plea bargain is like a compromise. You plead guilty to the crime. A lesser offense or crime, and you bypass a trial by taking a plea bargain. You admit your guilt. The consequences are less harsh."

*State,* 648 N.W.2d 228, 231 (Minn.2002); *see* Minn.Stat. § 590.04, subd. 3 (2004). "We afford great deference to a postconviction court's findings of fact and will not reverse the findings unless they are clearly erroneous." *Shoen,* 648 N.W.2d at 231. Additionally, "[t]he decisions of a postconviction court will not be reversed absent an abuse of discretion, and we will consider only whether there is sufficient evidence to support the postconviction court's conclusions." *Id.* On a first postconviction petition, "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief, the court shall promptly set an early hearing on the petition and response thereto." Minn.Stat. § 590.04, subd. 1 (2004). Here, the postconviction court did not hold a hearing.

■ Bruestle argues that the postconviction court erred when it dismissed his ineffective assistance of counsel claim and his incompetency claim without holding an evidentiary hearing. Bruestle's ineffective assistance of counsel claim is based on his contention that his trial counsel erred by failing to adequately pursue Bruestle's potential insanity defense and incompetency argument. Bruestle asserts that had his counsel not so erred, he would not have pleaded guilty.

■ A plea may be withdrawn to correct a manifest injustice. Minn. R.Crim. P. 11.05, subd. 1. Under Minn.Stat. § 611.026 (2004),[6] no one may be tried for or plead guilty to a crime if he is incompetent to stand trial due to mental illness or mental deficiency. Minnesota Rule of Criminal Procedure 20.01 states that a defendant is incompetent to stand trial if he: "(1) lacks sufficient ability to consult with a reasonable degree of rational understanding with defense counsel; or (2) is mentally ill or mentally deficient so as to be incapable of understanding the proceedings or participating in the defense." Additionally, under Minn.Stat. § 611.026, a defendant may be excused entirely from criminal liability if "at the time of committing the alleged criminal act the person was laboring under such a defect of reason, from [a mental illness or deficiency], as not to know the nature of the act, or that it was wrong." The defense of qualifying insanity at the time of the commission of the crime under section 611.026 is known as the *M'Naghten* rule. *State v. Odell,* 676 N.W.2d 646, 647 (Minn.2004). When making a determination about a defendant's sanity, a court can, in addition to assessing expert witness testimony, look to events surrounding the crime. *Davis v. State,* 595 N.W.2d 520, 527 (Minn.1999).

■ In order to succeed in asserting an ineffective assistance of counsel claim, Bruestle must demonstrate (1) that his counsel's performance " 'fell below an objective standard of reasonableness,' " and (2) " 'that a reasonable probability exists that the outcome would have been different but for [his] counsel['s] errors.' " *Voorhees v. State,* 627 N.W.2d 642, 649 (Minn. 2001) (quoting *State v. Lahue,* 585 N.W.2d 785, 789 (Minn.1998)); *see also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In other words, in order for the postconviction court to conclude that Bruestle's trial counsel was ineffective, the court would

---

6. Minnesota Statutes § 611.026 reads:

No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but the person shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act the person was laboring under such a defect of reason, from one of these causes, as not to know the nature of the act, or that it was wrong.

have to determine (1) that counsel's decision not to pursue a mental illness or incompetency defense was unreasonable, and (2) that there was a reasonable probability that Bruestle would not have pleaded guilty had his counsel pursued the defense. In order for our court to overturn the postconviction court's decision, we would have to conclude that the postconviction court abused its discretion in finding no basis for an ineffective assistance of counsel claim.

 The petitioner bears the burden of proof on an ineffective assistance of counsel claim, and there is a strong presumption that " 'counsel's performance fell within a wide range of reasonable assistance.' " *State v. Miller*, 666 N.W.2d 703, 716 (Minn.2003) (quoting *Lahue*, 585 N.W.2d. at 789). We accord particular deference to counsel's trial strategy. *Lahue*, 585 N.W.2d at 789. We review the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *See Carney v. State*, 692 N.W.2d 888, 892 (Minn.2005).

As previously noted, Bruestle has the burden to prove that his counsel was ineffective, yet he has presented no evidence to that effect. There is no expert testimony in the record regarding either Bruestle's mental state at the time he killed McIntyre or at the time he pleaded guilty. The only Rule 20 evaluations in the record were done approximately a year and a half after McIntyre's murder and deal with Bruestle's later attack on a fellow prison inmate. There are no affidavits from unaffiliated defense attorney experts to the effect that counsel's representation of Bruestle fell below an objective standard of reasonableness. Further, Bruestle has withheld the most probative evidence in the case. His refusal to waive medical or attorney-client privileges has rendered unavailable information from Nelson and Bruestle's trial counsel as to what Nelson's conclusions were regarding Bruestle's mental state at the time of McIntyre's death and why Bruestle's trial counsel decided not to further pursue a Rule 20 defense. While Bruestle hinted that he might waive these privileges at the evidentiary hearing, we conclude that the postconviction court was justified in denying an evidentiary hearing on the record before it. The court was not required to order a hearing merely on the basis of the potential of new, undisclosed information, the import of which Bruestle refused to reveal in his petition.

Bruestle has submitted three mental evaluations unconnected to the McIntyre killing and asks us to draw the inference that, based on these evaluations, he was so likely insane under the *M'Naghten* rule at the time of the killing, or so likely incompetent at the time of his guilty plea, that his trial counsel's decision not to pursue a Rule 20 argument constitutes ineffective assistance of counsel. But in the absence of any directly applicable evidence on this question—or even the promise of any such evidence—the postconviction court's conclusion that an evidentiary hearing could not show that Bruestle's counsel was ineffective was not an abuse of discretion.

Bruestle further argues that the recent United States Supreme Court case of *Rompilla v. Beard*, 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), requires that his plea be withdrawn due to trial counsel's ineffectiveness. In *Rompilla*, defendant Rompilla was convicted of a brutal murder and was facing the death penalty. *Id.* at ——, 125 S.Ct. at 2460. Rompilla's counsel failed to review certain information and evidence, despite having convenient access to the information and evidence, and despite knowing that the state would be presenting the evidence to the sentencing jury

as aggravating evidence. *Id.* at ——, 125 S.Ct. at 2463–67. Additionally, Rompilla's counsel failed to follow up on several obvious leads that, when pursued by postconviction counsel, yielded potentially mitigating facts regarding Rompilla's alcoholism and dysfunctional childhood. *Id.* at ——, 125 S.Ct. at 2463, 2468. The Supreme Court held that because of this failure, Rompilla's counsel was ineffective and Rompilla deserved a new sentencing hearing. *Id.* at ——, 125 S.Ct. at 2467, 2469. But we conclude that *Rompilla* is not applicable here because Bruestle's trial counsel, unlike Rompilla's counsel, did recognize and pursue the possibility of a Rule 20 defense for Bruestle, but then, upon consultation with an expert, appears to have decided to abandon any Rule 20 defense.

Bruestle also claims that the postconviction court erred in concluding without an evidentiary hearing that he was competent to plead guilty. In support of this claim, he argues that *Burt v. State,* 256 N.W.2d 633 (Minn.1977), requires that he be granted relief. In that case, Burt represented himself and pleaded guilty to burglary after steadfastly refusing any assistance of counsel. *Id.* at 634. We noted that, at the time Burt entered his plea, "the court apparently was unaware of any facts which would cast doubt on [Burt's] capacity to make an intelligent decision whether to waive counsel." *Id.* at 635. The presentence investigation, however, revealed facts indicating that Burt was "of considerably lower than average intelligence," casting doubt on his capacity to intelligently waive counsel. *Id.* at 635–36. But *Burt* is not helpful here because it dealt with a situation wherein a defendant waived his right to counsel. Being without counsel, Burt had no advocate to bring up or investigate the possibility of incompetency. Bruestle, in contrast, was represented by counsel when he pleaded guilty, and his counsel in fact did conduct an investigation into a possible incompetency argument. Again, Bruestle has produced no evidence that he was incompetent at the time of his plea, and we accordingly will not depart from the judgment of the postconviction court that Bruestle was competent at the time of his plea.

For the foregoing reasons, we conclude that Bruestle has not met his burden of raising an evidentiary question that merits a postconviction hearing, and neither *Burt* nor *Rompilla* supports his contention that an evidentiary hearing was merited. Therefore, we hold that the postconviction court did not abuse its discretion when it denied Bruestle's petition for postconviction relief without holding a hearing.

Affirmed.