*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0115**

Steven White, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed September 15, 2014
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-10-46189

Steven White, Rush City, Minnesota (pro se appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Bjorkman, Judge; and Smith, Judge.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

Appellant challenges the postconviction court's summary denial of his petition for postconviction relief, arguing that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel. We affirm.

## FACTS

A jury found appellant Steven White guilty of first-degree aggravated robbery, kidnapping, and prohibited possession of a firearm. The district court sentenced White to serve 108 months in prison. This court affirmed White's convictions on appeal, but we remanded for resentencing. *State v. White*, A11-1030, 2012 WL 2077300, at *1 (Minn. App. June 11, 2012), *review denied* (Minn. Aug. 21, 2012).

After resentencing, White filed a petition for postconviction relief, contending that he was denied his right to effective appellate counsel. White argued that his appellate counsel rendered ineffective assistance by failing to seek a stay of the direct appeal in order to file a petition for postconviction relief based on ineffective assistance of trial counsel. White argued that his trial counsel was ineffective for several reasons. The postconviction court concluded that White failed to allege sufficient facts to support a claim of ineffective assistance of trial counsel. The postconviction court further concluded that because White failed to establish ineffective assistance of trial counsel, his claim of ineffective assistance of appellate counsel failed. The postconviction court denied White's petition for postconviction relief without a hearing. White appeals.

2

**D E C I S I O N**

A postconviction court must hold an evidentiary hearing on a petition for relief "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2012). To obtain a hearing, a petitioner must allege facts that, if proved by a fair preponderance of the evidence, would entitle him or her to relief. *King v. State*, 649 N.W.2d 149, 156 (Minn. 2002). An evidentiary hearing is required when disputed material facts must be resolved to determine the postconviction issues on the merits. *Opsahl v. State*, 677 N.W.2d 414, 423 (Minn. 2004). A summary denial of a postconviction petition is reviewed for an abuse of discretion. *Powers v. State*, 695 N.W.2d 371, 374 (Minn. 2005).

"When an ineffective assistance of appellate counsel claim is based on appellate counsel's failure to raise an ineffective assistance of trial counsel claim, the appellant must first show that trial counsel was ineffective." *Fields v. State*, 733 N.W.2d 465, 468 (Minn. 2007). To receive an evidentiary hearing on a postconviction claim of ineffective assistance of counsel, a petitioner must allege facts that, if proved by a fair preponderance of the evidence, would satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984). *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012). "The two prongs of the *Strickland* test are: (1) the defendant must prove that counsel's representation fell below an objective standard of reasonableness; and (2) the defendant must prove there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013). A defendant must overcome the "strong presumption that counsel's

3

performance fell within a wide range of reasonable assistance." *Gail v. State*, 732 N.W.2d 243, 248 (Minn. 2007); *see also Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (observing that judicial review should be "highly deferential" to counsel's performance). And an appellate court "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

The state argues that White's "ineffective assistance of trial counsel claims are procedurally barred." *See State v. Knaffla*, 309 Minn. 246, 246, 243 N.W.2d 737, 738 (1976) ("Where direct appeal has once been taken, all matters raised therein, or all claims known but not raised will not be considered upon a subsequent petition for postconviction relief."). But White raised his claim of ineffective assistance of trial counsel within the context of his ineffective-assistance-of-appellate-counsel claim in the postconviction court. And the only issue that the postconviction court addressed and decided was White's ineffective-assistance-of-appellate-counsel claim. We therefore construe White's arguments on appeal as addressing the ineffective-assistance-of-appellate-counsel claim, which is not procedurally barred. *See Schneider v. State*, 725 N.W.2d 516, 521 (Minn. 2007) (concluding that an ineffective-assistance-of-appellate-counsel claim premised upon an appellate counsel's failure to raise an ineffective-assistance-of-trial-counsel claim "is not barred by *Knaffla* because Schneider could not have known of ineffective assistance of his appellate counsel at the time of his direct appeal").

We address each of White's seven assignments of error in turn.

*Trial counsel's waiver of White's right to confront the DNA expert*

During trial, White's attorney stipulated—with White's knowledge—that a police officer could testify that White's DNA matched DNA found on a hat recovered from the crime scene, without requiring testimony from the forensic scientist who examined the DNA.

The postconviction court concluded that White's attorney's stipulation did not render him ineffective because a "criminal defense lawyer's stipulation to the admission of a forensic scientist's report, made with the defendant's knowledge, does not require a defendant's personal waiver of the right to confrontation in order for the waiver to be valid" and that White had "failed to allege sufficient facts to prove that there is a reasonable probability that cross examination of the DNA technician would have changed the outcome of the trial."

White fails to establish a reasonable probability that, but for the stipulation, the result of the trial would have been different. *See Nicks*, 831 N.W.2d at 504. White argues that the police officer's testimony regarding the DNA results "served to . . . corroborate the other witnesses purported testimony, that [he] is the individual who [wore] the baseball hat during the alleged offense . . . [and] that [he] is the hat's owner." White further argues that the testimony "erroneously place[d] [him] at the crime scene, and inside of the alleged victim's vehicle." Although the DNA testimony bolstered the state's case, White does not explain how the result would have been any different if the forensic scientist had testified about the DNA results rather than the police officer. For

5

example, White does not allege any additional facts that could have been brought to light through cross-examination of the forensic scientist that would have cast doubt on the results of the DNA analysis. *See Leake v. State*, 737 N.W.2d 531, 536 (Minn. 2007) (requiring postconviction petitioner to allege facts that if established would show that, "but for [trial counsel's] errors, the result would have been different" (quotation omitted)). And because White does not establish a reasonable probability that the result of the trial would have been different, he has not satisfied the *Strickland* test.

*Jury Instructions*

White challenges the postconviction court's conclusion that his trial counsel was not ineffective for failing to request an adequate jury instruction defining "possession" and "firearm."

With regard to prohibited possession of a firearm, the district court instructed the jury based on 10A *Minnesota Practice*, CRIMJIG 32.42 (2006), as follows:

> First, the defendant knowingly possessed a firearm. A person possesses a firearm if it is on his person. A person also possesses a firearm if it was in a place under his or her exclusive control, to which other people did not normally have access or, if found in a place to which others had access, he or she knowingly exercised dominion and control over it.

White argues that the jury should only have been instructed on actual possession because "the trial record reflects there was no firearm found; therefore the constructive possession doctrine would not possibly apply." White further argues that the jury should have been given an instruction "defining the term 'firearm.'" But White does not allege that his trial counsel's actions fell below an objectively reasonable standard or that the

result would have been different but for counsel's actions. *See Leake*, 737 N.W.2d at 536 (requiring postconviction petitioner to allege facts that if established would show counsel's representation fell below an objective standard of reasonableness and that, "but for the errors, the result would have been different") (quotations omitted)).

*Trial counsel's concession of guilt during closing argument*

White argues that the postconviction court erred "when it ruled the defense counsel's concession that [his] nickname is 'Zo' was not a concession of [his] guilt."

"When counsel for the defendant admits a defendant's guilt without the defendant's consent, the counsel's performance is deficient and prejudice is presumed." *State v. Prtine*, 784 N.W.2d 303, 317-18 (Minn. 2010). "The decision whether or not to admit guilt at trial belongs to the defendant, and a new trial will be granted where defense counsel, explicitly or implicitly, admits a defendant's guilt without permission or acquiescence." *State v. Pilcher*, 472 N.W.2d 327, 337 (Minn. 1991).

> In evaluating whether defense counsel made an improper concession, we first perform a de novo review of the record to see if counsel in fact conceded the defendant's guilt and, if so, we must proceed to the second prong of the inquiry and determine whether the defendant acquiesced in that concession.

*Prtine*, 784 N.W.2d at 318. "[E]ven implied concessions require client consent." *Dukes v. State*, 660 N.W.2d 804, 812 (Minn. 2003). This court "will find an implied concession only where a reasonable person viewing the totality of the circumstances would conclude that counsel conceded the defendant[']s guilt." *Torres v. State*, 688 N.W.2d 569, 573 (Minn. 2004) (quotations omitted).

7

In this case, the victim testified on cross-examination that White's accomplice referred to White as "Zo" during the robbery. During closing argument, White's trial counsel presented the theory that the victim fabricated the robbery, feared prosecution for making a false crime report, and felt pressured to pick a person who looked familiar from a photo lineup. It was part of White's defense theory that the victim picked White because he knew White and therefore knew White's nickname. No reasonable person viewing the totality of the circumstance would conclude that White's trial counsel conceded guilt by stating that White's nickname was "Zo." On the contrary, White's attorney elicited evidence of White's nickname and used it to advance White's defense theory.

*Trial counsel's failure to move to suppress a photographic lineup*

White argues that the postconviction court erred "when it ruled trial counsel's decision not to suppress the identification evidence was a reasonable trial strategy and that [he] failed to allege sufficient facts that a motion to suppress would have been successful or otherwise changed the trial outcome."

"[T]here are valid strategic reasons for [a trial] counsel's failure to object to . . . lineup identification evidence." *State v. Heinkel*, 322 N.W.2d 322, 326 (Minn. 1982). And "[g]enerally, [an appellate court] will not review ineffective assistance of counsel claims based on trial strategy . . . includ[ing] the selection of evidence presented to the jury." *Sanchez-Diaz v. State*, 758 N.W.2d 843, 848 (Minn. 2008) (citations omitted). Because the decision to move for suppression of a photo-lineup identification procedure is part of trial strategy, we decline to review this claim.

*Trial counsel's failure to object to prosecutorial vouching*

White argues that the postconviction court erred "when it ruled that trial counsel's failure to object to the prosecutor's vouching for [a police officer] was a matter of trial strategy."

During closing argument, the prosecutor stated the following:

> Let me just be frank. If you believe that Sergeant Larson, despite his testimony, circled the number four underneath . . . White's photograph before he presented it to [the victim], I am beyond in deep trouble. Annie, bar the door. That would taint this. Does – any inference that Sergeant Larson did anything but what he told you, if that's reasonable to assume, then I apologize. I have wasted 30 minutes of your time.

White's trial counsel did not object to this statement. But White does not allege that his trial counsel's performance fell below an objectively reasonable standard because counsel failed to object or that the result would have been different if he had objected. *See Leake*, 737 N.W.2d at 536.

*Trial counsel's failure to properly cross-examine the victim*

White contends that his trial counsel "erred in his attempt to impeach [the victim] about there being no tattoos on [his] hands, when [the victim] had told the police . . . that the perpetrator had tattoos on his upper right arm." White further complains that his trial counsel did not have him display his bare arms to show the jury that he "unequivocally" had "no tattoos, scars or markings." White did not provide evidentiary support for his claim in the form of an affidavit showing that his attorney's cross-examination fell below an objective standard of reasonableness. *See Bruestle v. State*, 719 N.W.2d 698, 705 (Minn. 2006) (stating that a "petitioner bears the burden of proof on an ineffective

assistance of counsel claim, and there is a strong presumption that counsel's performance fell within a wide range of reasonable assistance" and noting that "[t]here are no affidavits from unaffiliated defense attorney experts to the effect that counsel's representation of Bruestle fell below an objective standard of reasonableness" (quotations omitted)). And the decision to offer evidence of the lack of tattoos or markings on White's arms is trial strategy, which this court does not review. *See State v. Voorhees*, 596 N.W.2d 241, 255 (Minn. 1999) ("What evidence to present to the jury . . . represent[s] an attorney's decision regarding trial tactics which lie within the proper discretion of trial counsel and will not be reviewed later for competence.").

*Trial counsel's failure to object to a jailhouse informant's testimony*

White argues that the postconviction court erred "when it ruled the jailhouse informant's testimony was relevant to [his] identity and based on personal knowledge and that [he] failed to show that an objection to informant's testimony would have been successful." White once again fails to allege that his trial counsel's actions fell below an objectively reasonable standard or that the result would have been different but for counsel's actions. *See Leake*, 737 N.W.2d at 536.

In conclusion, none of White's arguments has merit. White did not allege facts that, if proved, would entitle him to relief on his ineffective-assistance-of-trial-counsel claims. And because those claims fail, his ineffective-assistance-of-appellate-counsel claim necessarily fails. *See Fields*, 733 N.W.2d at 468 ("When an ineffective assistance of appellate counsel claim is based on appellate counsel's failure to raise an ineffective assistance of trial counsel claim, the appellant must first show that trial counsel was

ineffective."). Thus, the postconviction court did not abuse its discretion by denying

White's petition without an evidentiary hearing. We therefore affirm.

**Affirmed.**