# IN THE COURT OF APPEALS OF IOWA

No. 25-0775
Filed October 29, 2025

**IN THE INTEREST OF A.M., J.M., and O.M.,**
**Minor Children,**

**S.M., Mother,**
          Appellant.

_____

Appeal from the Iowa District Court for Polk County, Erik Howe, Judge.

A mother appeals the termination of her parental rights to her children under Iowa Code section 232.116(1)(d), (f), (h), and (i) (2024).  **AFFIRMED.**

Lori M. Holm, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**SANDY, Judge.**

The juvenile court terminated the parental rights of the mother and father to three children. The mother appeals.[1] She challenges the statutory grounds supporting termination, the determination that termination is in the children's best interests, the finding that the exceptions to termination did not apply, and the decision to not transfer the children to a guardianship.

## I.  Background Facts and Proceedings.

A.M. was born in 2014, O.M. was born in 2016, and J.M. was born in 2021. The State filed a petition in June 2023 alleging all three children were children in need of assistance (CINA). The allegations in the petition focus on the father allegedly sexually abusing A.M. The Iowa Department of Health and Human Services (HHS) had concerns about the mother's inability to create a safe environment for the children and her alleged "coaching" of the children. Specifically, that the mother coached her children to lie or omit occurrences of the father's sexual abuse of A.M. in reports to HHS officials and healthcare providers.

The children were taken to Blank Children's STAR Center for interviews. During her interview, A.M. stated that if she and her brother "do a good job today she will get a tablet and her brother will get a Nintendo Switch." A.M. further stated in the interview that her mother told her and her siblings that they are not allowed to talk about "bad things that happen at home" or they would not get their prizes. A.M. also reported that she was having contact with her father as he was still living

---

[1] The juvenile court's order also terminated the father's parental rights under Iowa Code section 232.116(1)(a) (2024). Since the father consented to the termination, he has not separately appealed.

in the home. A.M. refused to make any statements regarding the alleged sexual abuse, or any "good touch or bad touch." During O.M.'s interview, he stated that his dad "touched his sister's butt all the time, but it really is an accident." O.M. also stated that his mother told the children not to say anything because it would get their father in trouble. O.M. stated he did not want to get his father "sent away."

On August 7, 2023, the juvenile court temporarily removed the children from the parents' home and found the children to be CINA. The court continued out of home placement throughout 2024 and granted a six-month extension on June 6, 2024. The court concluded at that hearing that although both parents were engaged with services, there had been a "relatively inexcusable" delay in doing so.

At a permanency hearing held on November 5, the court confirmed the children as CINA, continued out of home placement, and directed the State to initiate termination proceedings. The court found, although both parents continued to engage in services, the parents had failed to address the problem that "neither of them acknowledged that sexual abuse had occurred."

The juvenile court did not find the mother's testimony to be credible throughout the case or at trial, as she would "frequently provide varying explanations, or no explanation, for her practice of telling various people different stories." For example, the mother reported throughout the case that she was no longer in a relationship with the father and that she was not seeing him. But while the children were removed from the parents' home during this case, the mother reported a recent arrest where she had been drinking with her husband and drove him home while intoxicated.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (f), and (i) as to A.M. and O.M., and section 232.116(1)(d). (h), and (i) as to J.M.

## II.  Standard of Review.

We review juvenile court orders terminating parental rights de novo.  *In re J.V.*, 23 N.W.3d 595, 603 (Iowa 2024).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  We use a three-step process to determine whether a statutory ground has been established, if the termination is in the child's best interests, and if any permissive exceptions should be applied to preclude termination.  *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021).

## III.  Discussion.

### A.  Grounds for Termination

When the juvenile court terminates parental rights on multiple statutory grounds, we may affirm on a single cited ground.  *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

The juvenile court terminated the mother's parental rights to A.M. and O.M. on three statutory grounds, as set forth in Iowa Code section 232.116(d), (f), and (i).  The juvenile court terminated the mother's parental rights to J.M. under subsection (d), (h), and (i).  In the mother's brief, she challenges the grounds for termination under subsection (h) only.[2]  We will address this challenge and

---

[2] The mother also challenged grounds for termination under subsection (g), though the juvenile court did not rely on subsection (g) as a ground for termination in its order.  We assume this is a typographical error and will thus ignore it.

presume the mother does not challenge the statutory grounds for termination of her parental rights to O.M. and A.M. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (When a parent does not dispute the existence of grounds under section 232.116, "we do not have to discuss this step").

For the court to terminate under Iowa Code section 232.116(1)(h), four elements are required:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges element four and argues that the State cannot prove its burden by clear and convincing evidence that J.M. cannot be returned to her. She points to her stated commitment to continuing counseling and mental-health treatment, as well as the fact that she is employed and has her own housing independent of the father. The mother also highlights the fact that she has participated in all scheduled supervised visits of the children with the department.

Despite the mother's participation in visits with the children, there is clear and convincing evidence that J.M. cannot be returned to her custody. The record reflects that, throughout the case, the mother has had continued contact with A.M.'s sexual abuser. Both A.M. and O.M. stated that the mother offered them "prizes" (which were, in essence, bribes) if they did not tell department officials or health professional about the "bad things that happen at home." We give the

juvenile court's credibility determinations their due weight and agree that we do not find the mother credible.

Although there were no reports that the father sexually abused J.M., we are still concerned by the mother's ongoing contact with the father and her willingness to try to cover up his sexual abuse. We are not convinced that J.M. can be returned to the mother's custody.

### B. Best Interests

We apply the best-interest framework set out in Iowa Code section 232.116(2). In doing so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). We consider the children's long-term and immediate interests. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020). We must look at what the future may hold for the children if they were to be returned to their mother's care. *Id*. We do this by looking to a parent's past performance as it can help predict the quality of care the parent is able to provide. *Id*.

The mother argues that termination is not in the children's best interests because of her bond with the children. She claims her bond with the children was shown during her parenting and visitation times, therapy reports, and the children's own stated desires of wanting to return home.

We find termination is in the children's best interest. We are concerned that returning the children to their mother's custody could threaten their safety. The mother had continued contact with A.M.'s sexual abuser throughout the life of the case, despite claiming otherwise. We re-emphasize how concerning it is the

mother tried to bribe her children into keeping quiet about their father's sexual abuse. Although the mother has engaged with some department services since then, we are not convinced that she has internalized the lessons from those services.

At the time of the termination hearing, the children had been removed from parental custody for 569 days. They deserve permanency in a safe environment. Termination is in the children's best interests.

## C. Permissive Exceptions

Next, we must decide whether any exceptions to termination under section 232.116(3) apply. The mother argues that her closeness and bond with the child should preclude termination.[3] Our consideration focuses on whether termination will disadvantage the child, and whether the disadvantage overcomes the parent's inability to provide for the child's developing needs. *In re D.W.*, 719 N.W.2d 703, 709 (Iowa 2010).

We do not question that the mother loves her children. Even so, love is not enough to justify our application of this exception. *Id*. Our concern, like the juvenile court, is that the mother has not internalized any of the services she has utilized from the department. Our reading of the record suggests that the mother will say what she thinks she needs to say, regardless of the sincerity, to obtain custody of her children. The mother reported in the past that she did not believe sexual abuse occurred. But, once she understood that she may not be able to reunify with the

---

[3] The mother also asserts that section 232.116(3)(a) applies. But no relative has legal custody of the children, the department has legal custody of the children. Thus, section 232.116(3)(a) does not apply.

children if she didn't believe the sexual abuse occurred, she began reporting that she did believe the sexual abuse occurred. This was a cyclical pattern throughout the record that causes us to defer to the trial court's determination of the mother's credibility. We decline to apply any permissive exception.

### D. Guardianship

Finally, the mother argues that we should transfer guardianship with a relative given the ages of the children, and because the mother "has completed all of the tasks assigned, requested or ordered" by the court.

"Guardianship is not a legally preferable alternative to termination." *In re B.T.*, 849 N.W.2d 29, 32 (Iowa Ct. App. 2017). Relevant factors we consider in making a guardianship determination include the children's ages, the length of removal, the viability of other permanency options, and the relationship between the parent and guardian. *In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018).

At trial, the State did not recommend guardianship for the children. The attorney for the State argued "given the children's age and the need for permanency, guardianship is not a permanent option for the children." We agree that, in this case, guardianship is not a permanent option for these children and would only delay permanence. These children are young and have been removed from their parent's home for coming up on two years. They deserve permanency in a loving, safe home. We will not, therefore, transfer guardianship.

**AFFIRMED.**